## SUPREME COURT.

THE PEOPLE *ex rel.* JOHN P. MASTERSON agt. ALBERT GALLUP, treasurer of Albany county.

*Supervisors — local legislation by — Laws of 1875, chapter 482 — Supervisers may create and give to county officers a clerk — County treasurer cannot resist paymtnt on the ground of invalidity of the law.*

A board of supervisors of a county may, under chapter 482 of the Laws of 1875, create and give to county officers a clerk.

The resolution of the board of supervisors of Albany county, creating and giving to the coroners of such county a clerk, and fixing his compensation, is not in violation of section 24 of article 3 of the Constitution, which forbids the legislature, common council of a city or the "board of supervisors" to grant any extra compensation to any public officer, servant, agent or contractor.

An officer who has received money raised by tax for a specific purpose, cannot successfully resist the payment of the money to the person for whom it was levied and collected, upon the ground that the local law under which it was obtained was invalid.

The supervisors having the power to pass the resolution, the want of a seal cannot affect their action.

*Albany Special Term, February*, 1883.

MOTION for a peremptory *mandamus* to compel the respondent, as county treasurer of Albany county, to pay salary to the relator as clerk to the coroners of the county.

*Peckham & Rosendale*, for the relator.

*M. T. Hun* and *Matthew Hale*, opposed.

WESTBROOK, *J.* — The relator, John P. Masterson, asks for a peremptory *mandamus* against Albert Gallup, treasurer of Albany county, to compel the latter to pay to the former $100 for his salary as clerk to the coroners of Albany county during the month of January, 1883. The application is upon the following agreed statement of facts.

On December 21, 1882, a special committee of the board of supervisors of Albany county, to whom the matter had been referred, reported favorably this resolution :

" *Resolved*, By the board of supervisors of the county of Albany, that hereafter there shall be one clerk only to coroners of the county of Albany, who shall receive a salary of one hundred dollars monthly, payable on the first day of each month by the county treasurer. Such clerk shall be appointed by the coroners of said county in the month of December of each year, by a written appointment signed by a majority of such coroners, and acknowledged by each coroner signing the same before some officer authorized to take the proof and acknowledgment of deeds within such county, and the same shall be filed in the clerk's office of said county. Such clerk shall hold his office for one year from such appointment, and until his successor is duly appointed. The office of the coroner shall be located in the rooms of the board of supervisors, and the duty of the clerk shall be to attend at such office during each week day, and to aid the coroners in the discharge of their duties, and to receive, preserve and file each inquisition and to keep a record of the same.

" The foregoing resolution is passed by authority of chapter 482 of the Laws of 1875, subdivision second of section first."

On the day of its presentation (December 2, 1882) the report was accepted, and under the rules of the board its con-

sideration was postponed to the next day. On that day "it was taken up in the order of business devoted to the consideration of the matters reported by the several committees of the board." The resolution as recommended and contained in the report of the committee was then read by the clerk, and the chairman put the question thus: "All in favor of adopting the resolution will answer in the affirmative, those opposing in the negative." The clerk then called the roll of the members, entering the names of those voting in the affirmative and in the negative upon the journal; which resulted in nineteen votes in favor of its adoption and seven against it. Nineteen was a majority of all the members elected to the board. The resolution as passed, with the vote thereon, was duly entered upon the journal of the board.

A copy of such resolution having a *prefix* as follows: "No. 1. At a meeting of the board of supervisors of the county of Albany, held on Friday, December 22, 1882, the following was adopted," and the following *postscript*, " and was passed by a majority vote of all members elected to the board," and attested by the signature of " Edward A. Maher, president of the board of supervisors;" and that of " Thomas H. Craven, clerk," but not by any official seal, there being in existence no official seal of the board of supervisors of Albany county, was filed in the office of, the clerk of Albany county during the month of December, 1882, and within a week of the close of the session of said board.

Within six weeks of the close of the session of said board of supervisors there was published in the newspapers in the county of Albany appointed to publish the session laws of the legislature the following:

### Number 1.

*Proceedings of the Board of Supervisors.*

At a meeting of the board of supervisors of Albany county, held at their rooms on Friday, December 22, 1882, the following resolution was adopted : A resolution prescribing the

mode of appointment and the number of clerks to the coroners of Albany county and fixing the pay thereof:

*Resolved*, (by the board of supervisors of the county of Albany), That hereafter there shall be one clerk only to coroners of the county of Albany, who shall receive a salary of $100 monthly, payable on the first day of each month by the county treasurer. Such clerk shall be appointed by the coroners of said county, in the month of December of each year, by a written appointment, signed by a majority of such coroners, and acknowledged by each coroner signing the same before some officer authorized to take the proof and acknowledgment of deeds within said county, and the same shall be filed in the clerk's office of said county. Such clerk shall hold his office for one year from such appointment, and until his successor is duly appointed. The office of the coroners shall be located in the rooms of the board of supervisors, and the duty of the clerk shall be to attend at such office during each week day, and to aid the coroners in the discharge of their duties, and to receive, preserve and file each inquisition, and to keep a record of the same. The foregoing resolution is passed by authority of chapter 482 of the Laws of 1875, subdivision 2 of section 1. And was passed by a majority vote of all members elected to the board. Edward A. Maher, president; Thomas H. Craven, clerk.

Pursuant to the resolution adopted by the board of supervisors, and in conformity with the form and manner therein prescribed, the relator, John P. Masterson, was by the coroners of Albany county elected on the 22d day of December, 1882, their clerk, for the term of one year from that date, and such appointment was filed in the office of the clerk of Albany county on the 29th day of December, 1882.

From the time of filing the appointment the relator has discharged the duties of clerk to the said coroners, and a few days after January 31, 1883, he demanded of the respondent Albert Gallup, the county treasurer of Albany county, the

sum of $100 in payment of his salary for that month, which payment was refused,

At the time of such demand there had been assessed upon and collected from the taxpayers of Albany county the sum of $1,200 to pay the salary of the clerk appointed under the resolution, which sum was in the possession and under the control of the said Albert Gallup, as treasurer of the county, for that object.

The application for the *mandamus* is resisted upon two general grounds (though there are distinct and separate points made under each): First. That the supervisors had no power to pass the resolution; and, second. That in attempting to pass it they did not follow the requirements of the statute (*chap.* 482 *of the Laws of* 1875) under which they professed to act. The various points under these two general propositions which have been made in opposition to the application of the relator will now be examined.

*First.* It is argued that the statute, to which reference has just been made, did not authorize the board of supervisors of a county to create or give a clerk to any officer of the county, but "simply gave power to regulate the mode of appointment, &c., of deputies, clerks, &c., already in existence, or whose creation was especially authorized by law."

By section 1 of the said act "the boards of supervisors in the several counties of this state, except in cities whose boundaries are the same as those of the county," were vested with "further powers of local legislation and administration," and empowered "to make and administer within their respective counties laws and regulations as follows: * * * 2. To fix, subject to the limitations of section fifteen, article six of the Constitution, the salaries and *per diem* allowance of county officers whose compensation may be a county charge, and which shall not be changed during the term of office of such officers, respectively, and to prescribe the mode of appointment and fix the number, grades and pay of the deputies, clerks and subordinate employes in such offices."

If, as the objection concedes may be done, a board of supervisors may, when clerks are allowed by a general law of the state to a county, "prescribe the mode of appointment;" that is to say, change the mode of appointment and "fix the number, grade and pay" of such clerks; that is to say, enlarge or reduce their number, change their grade and pay, is it not a technical construction of the language employed which limits the power of the supervisors only to such clerks as general statutes authorize? Nay, does not the argument defeat itself? It surely is more reasonable to suppose that it was intended rather to confer the power of creating a clerkship than to give the right to change the mode of appointment, abolish, reduce or enlarge the number of clerks and increase or decrease the compensation when they had been established by general statutes. The former involves no repeal of legislative enactments while the latter does. If a clerkship created by general law may be abolished by the supervisors, why cannot one be created? And if two clerks can be given by them to a county officer when only one was before authorized, why may they not give one to any official who was previously without any? The power exerted in either case is precisely of the same character, and there does not seem to be any sufficient reason so to construe the statute as to confer the right of legislation in the one case and yet to withhold it in the other. The fact is that a power to "fix the number" of clerks which a county officer may have must and does carry with it the authority of giving or withholding clerks according to the judgment of the body upon whom that power is conferred. In declaring, then, that the coroners of Albany county should have one clerk the supervisors did that which the statute authorized them to do, to wit, "fix the number" of the clerks which such officials should have.

It was argued that such a construction would place it in the power of boards of supervisors to increase the number of employes. That is true, and it is equally true of the construction maintained in behalf of the respondent; but it is also true that all power may be abused, and therefore may be

more safely confided to a body of men directly responsible to a constituency which can speedily undo bad legislation than to a body, the legislature for instance, over whom the parties affected have very little control. It was precisely this argument which induced the adoption of section 23 of article 3 of our State Constitution, requiring the legislature to confer by general laws " upon the boards of supervisors of the several counties of the state such further powers of local legislation and administration as the legislature may from time to time deem expedient ; " and it was also the same reasoning, as well as the constitutional command, which produced chapter 482 of the Laws of 1875, the title of which is, "An act to confer on boards of supervisors further powers of local legislation and administration, and to regulate the compensation of supervisors." As a fact, it is well known that certain officers of counties need clerks, and no sound reason can be given, why the power of creating them should exist in a body over a large majority of whose members the taxpayers affected have no control. A statute of this character should receive a construction in harmony with its evident intent. In construing the law under consideration, we are to bear in mind what the chief executive of the state has recently, in a veto message, well said in regard to it: " The act referred to was passed, as its title declares, ' to confer upon boards of supervisors further powers of local legislation and administration,' and with the intent that the matters therein specified, being of local interest and importance, should be disposed of by an authority nearer home than the legislature of the state." In holding that this statute, by which boards of supervisors are authorized to " fix the number " of clerks to a county officer, confers upon them the power to give or withhold, and to increase or diminish the number of clerks to county officers, we construe it in harmony with the constitutional mandate, the object of the act of 1875, as declared in its title, and of that sound policy which requires power to be exercised by those over whom the community affected has direct control.

The People *ex rel.* Masterson agt. Gallup.

*Second.* It is claimed that the resolution is illegal because it directs the clerk to see that the inquisitions, &c., are filed, which is said to be inconsistent with section 778 of the Code of Criminal Procedure, because, as has been argued, the coroners are required personally to file them.

This objection, though specious, is unsound. So much of official duty as involves the judgment and discretion of an officer he must personally do, but he is not bound to perform and do in person all details of merely clerical work. A statute may make it the duty of a judge to file certain papers, but it was never doubted that if he sent his clerk with a document to the proper office for filing, that such a discharge of duty was illegal, or the filing a nullity. A clerk acts under the direction of the officer he is employed to assist, and it would be a most strained conclusion, that because the clerk of the coroners was directed to do certain clerical work in aid of their duties by the resolution creating him, that, therefore, the act of creation was void, although what he was directed to do could properly have been done by him if a coroner had personally requested it. The resolution does not require the clerk of the coroners to file the inquisitions in any particular place. If the general law of the state makes their filing in the clerk's office of the county a necessity, the resolution of the supervisors should receive a construction making the filing there the duty of the clerk. Courts are not to be astute in construing language so as to nullify legislation, but the precise contrary is their duty when the expression used is of doubtful import.

*Third.* It is insisted that the resolution violates section 24 of article 3 of the Constitution, which forbids the legislature, the common council of a city or the board of supervisors " to grant any extra compensation to any public officer, servant, agent or contractor."

To this argument it may be summarily said, that it is, at least, somewhat novel. It has not been hitherto supposed that if an officer was given a clerk, that the officer himself

received " extra compensation ; " if he does, it would be diffi-
cult to demonstrate it.    The practical construction of the con-
stitution for many years, as well as reason, forbids the accept-
ance of the objection as sound.

An examination of the various objections made to the
power which the supervisors of Albany county have exercised
in giving to the coroners of such county a clerk, leads to the
conclusion that neither is maintainable.    It remains to be
shown that the several propositions of the respondent, under
the second general proposition, " that the supervisors did not
follow the requirements of the statute (*chap.* 482 *of the Laws
of* 1875) under which they professed to act," are equally
untenable.

*First.* It is argued that the resolution was never passed
because in form it was not written on a distinct and separate
piece of paper, but was offered as contained in the report of
the committee, and that this was simply the adoption of a
report of a committee.

The act of 1875 does not require or prescribe any form of
enactment.    The report of the committee recommended the
adoption of a resolution which was written out.    After
accepting the report, the board fixed upon a time to consider
it.    When it reassembled it had before it a written resolution
offered by a committee of its members.    That resolution was
read and the chairman put the question : "All in favor of
adopting the resolution will answer in the affirmative, those
opposed in the negative."    The proceeding could not have
been misunderstood ; each member, as his name was called,
responded, and the result was nineteen votes in the affirmative
and seven in the negative.    The resolution, precisely as read,
was entered upon the journal and the vote duly recorded.    It
is difficult to see what more was needed or required to make
the action effective.    Certainly nothing in the statute requires
more, and for a court to insert words therein would be judicial
legislation.

*Second.* The remaining objections relate to omissions subse-

quent to the adoption, and cannot affect the enactment itself, which became valid by the vote.

This is apparent by the second section of the act, which prescribes what shall further be done with " every resolution adopted in pursuance of this act." It must then, that is after adoption, " be prefixed by a proper title concisely expressing contents," &c., and then certified and filed and published. All this has been done in the precise form required by the statute, except that the copy filed with the county clerk was not under the seal of the board, because it had none. Very plainly all these provisions are directory. The validity of the act depended upon the will of the supervisors, duly expressed in proper form and passed by a legal majority. Whether the board had or had not a seal, and therefore could or could not certify to their action under seal, was of no consequence. That was directory only, and as the statute does not declare action void unless all subsequent steps had been complied with, it may properly be said, as was said by the court of appeals, per WILLARD, J., in *The People* agt. *The Supervisors of Chenango* (8 *N. Y.*, 317–328), when it was argued that a law was void because a certain provision of the constitution was not complied with in its enactment, " there is no clause declaring the act to be void if this direction is not followed. It does not stand on the same footing with the requirement of a certain number to form a quorum or to pass a bill (*See, also, People* agt. *Board of Supervisors of Orange*, 27 *Barb.*, 584 ; and *People* agt. *Supervisors of Ulster county*, 34 *N. Y.*, 268, 272, 273, *etc.*)." The supervisors having the power to pass the resolution, the want of a seal could not affect their action any more than their ability and wisdom as legislators could possibly depend upon the possession of any such instrument.

In overruling the second general proposition also, and in directing the issue of the *mandamus* as asked, the argument urged to the court that Mr. Masterson has no duties to discharged will not be answered by the attempt to show that he

has. That question was for the supervisors. Courts are not to declare void legislative enactments or constitutional requirements according to their views of what statute or constitutional legislation should be. The creature is not above the creator, and should not undertake the impossible task of usurping his functions. Judicial interpretation should seek for the intent of the body or the individual whose language is to be construed. If the words employed are not of doubtful import, they should be construed as they read; and if capable of more than one construction, he whose duty it is to interpret their meaning should not seek to find ingenious arguments to sustain an interpretation harmonizing with his own views of what ought to have been said, but he should endeavor, if possible, to ascertain and give effect to the intention of those whose will and desire should control the decision of the question submitted.

In closing this opinion it is proper to refer to another point which the facts of this case present. The question which this proceeding involves is not, shall an enactment made without authority be enforced, but it is this, shall a mere custodian of moneys collected from taxpayers for a specific purpose; under color at least of law, be allowed to hold them from the very object for which they were collected, and for which they were received by him ? Mr. Masterson asks that the respondent shall pay moneys which the taxpayers of Albany county have placed in the hands of the latter for that very purpose. The county treasurer of Albany county is the officer or agent of its people. The money which the relator seeks, the respondent holds for the purpose of making such payment, and for no other. An order requiring such payment to be made will devote it to the very purpose for which it was collected, and the officer who is directed to pay can have no cause of complaint, that the judgment of this court compels the performance of a trust and a duty which, by the act of receiving the money now sought, he voluntarily accepted. In *First National Bank* agt *Wheeler et al.* (72 *N. Y.*, 201) it was held that " rail-

road commissioners of a town, who have received from the collector of the town moneys raised by tax to pay interest coupons on bonds of the town, issued in payment of a subscription to the capital stock of a railroad, cannot draw in question the validity of the bonds to justify them in refusing to pay over the moneys to the owners of the coupons;" and "the fact that the commissioners resist payment and defend an action against them by the holder of such coupons pursuant to a resolution of a town meeting and under a promise of idemnity from the town, does not make the invalidity of the bonds a defense to the action." The same principle was also held at a date earlier than that of the decision just referred to by the judge writing this opinion in *People ex rel. New York and Hudson River Railroad Company* agt. *Havemeyer* (47 *How.*, 494; *see pages* 516, 517), and it is exactly applicable to the present proceeding. The respondent has no defense to the present motion, even though the resolution of the supervisors was invalid. He has received the money to pay Mr. Masterson, and he must do that which by implication at least he has promised to do.

The order for a peremptory *mandamus* must be granted.