for such course, among them being that no amended complaint could be served until the issue of law had been disposed of, and that the complaint served was not designated as an amended complaint.

Upon an application previously made on behalf of the defendant Weil to vacate the order permitting the discontinuance as against the defendant Waibel, I denied the motion, on the ground that as against the defendant Waibel a discontinuance was proper, and that the question of the effect of such discontinuance upon the relations between the plaintiff and the defendant Weil need not be considered until it was presented directly by a motion suitable to the purpose. In Neun v. Bacon Co., 137 App. Div. 397, 121 N. Y. Supp. 718, it was held that, where demurrers had been interposed upon the ground that causes of action had been improperly united, each affecting different parties, the court had no power, prior to the decision of the demurrers, to permit the plaintiff to sever the action into two actions, and to serve an amended complaint in each action, notwithstanding the fact that the time to amend as of right had not expired, and it was further held that the plaintiff could not, under the guise of an amendment, sever the action. The reasons which led to the conclusion reached in that case lead equally to a denial of the motion made in this case.

Motion denied, with $10 costs to abide the event.

---

WADSWORTH v. BOARD OF SUP'RS OF LIVINGSTON COUNTY et al.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

1. COUNTIES (§ 47*)—BOARD OF SUPERVISORS—POWERS.
   Though the county board of supervisors is a body of limited powers granted to it by the Legislature, still it possesses inherent authority to perform acts to preserve or benefit the corporate property of the county intrusted to it.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. § 55; Dec. Dig. § 47.*]

2. COUNTIES (§ 113*)—BOARD OF SUPERVISORS—CONTRACTS—INDEX OF CONVEYANCES.
   The real property law (Laws 1896, c. 547), providing that each recording officer must provide at the expense of his county proper books for general indexes of instruments recorded in his office, and must form indexes therein so as to afford correct and easy reference to the books of record in his office, does not prevent the board of supervisors from contracting with the county clerk for the making of entirely new indexes of all the records, since the statute, not providing for any compensation, could not be considered applicable to so extensive a work.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. § 178; Dec. Dig. § 113.*]

3. COUNTIES (§ 113*)—SUPERVISORS—CONTRACTS—INDEXES OF CONVEYANCES.
   Under County Law (Laws 1892, c. 686) § 12, subd. 1, and section 26, defining the general powers of boards of supervisors, and providing that they shall have the care and custody of the corporate property of the county, and shall have general charge of the books and records of the county, etc., they have power to contract with the county clerk for the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

making of an entirely new index of all deeds of conveyances on record in his office.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 178; Dec. Dig. § 113.*]

4. Counties (§ 72*)—County Clerk—Additional Compensation.

Where the county board of supervisors contract with the county clerk to make an entirely new index of conveyances, recorded in his office, at a stated compensation in addition to his salary, the contract is not void as violative of the constitutional provision that he shall not receive additional compensation for the duties officially imposed on him, since making an entirely new index was not one of his official duties.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 72.*]

5. Counties (§ 128*)—Supervisors—Contracts—Approval by Judge.

Under County Law (Laws 1892, c. 686) § 26, providing that the county board of supervisors shall not accept and pay for any contract work or services until the work has been examined and approved as to its manner and form of execution by a judge of the Supreme Court, the approval by a judge of 21 volumes of indexes of conveyances recorded in the county, as contracted for by the board, is sufficient, though he looks at but two of the books, and takes the clerk's word that the others are in that form, especially where there is no question but that the work is properly done.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 193; Dec. Dig. § 128.*]

6. Counties (§ 204*)—County Board—Contracts—Compromises—Consideration.

Where there is some doubt as to the power of a county board of supervisors to contract with the county clerk for the making of an entirely new index of recorded conveyances, and the county refuses to pay, and thereafter compromises because of pending litigation, the compromise will be enforceable as founded on a new consideration.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 337; Dec. Dig. § 204.*]

McLennan, P. J., and Williams, J., dissenting.

Appeal from Equity Term, Livingston County.

Action by James W. Wadsworth against the Board of Supervisors of Livingston County and Henry B. Curtis and others. From a judgment for plaintiff (115 N. Y. Supp. 8), defendant Curtis appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

Walter S. Hubbell, for appellant.
Charles D. Newton, for respondent.

SPRING, J. In the year 1899, and continuously thereafter until the 31st day of December, 1904, the appellant, Curtis, was county clerk of the county of Livingston, and his compensation was paid by fees. On the 12th day of March, 1900, the board of supervisors of said county entered into a written agreement with the said defendant Curtis, whereby he agreed:

"To make and complete a full, proper and legible index of all deeds of conveyance on record in the office of clerk of the county of Livingston, filed and recorded during the period of time between the year 1821, inclusive of that year, and the 1st day of January, 1900; said index to include indices of every name, whether of grantors or grantees, or of the wives or husbands

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of said grantors or grantees, in said deeds contained; to include the towns in which all property forming the subject-matter of said deeds is situated;' and to include the certain years in which the aforesaid deeds were recorded together with references to the respective book of deeds and page therein their records containing."

By the terms of such agreement said indexing was to be carried on with reasonably convenient speed and to be completed within four years from the date of the agreement. Curtis was to receive "six cents each for all names, whether of grantors or grantees or of the wives or husbands of said grantors 'or grantees in said deeds expressed, entered on the slips to be prepared and completed by the said Henry B. Curtis in accordance with the provisions of this contract; said sum of six cents each to be paid by the party of the first part to the party of the second part and this payment to include the indexing of grantors and grantees completed."

The appellant immediately entered upon the performance of this agreement, employing and paying for such assistance as was necessary to enable him to carry it out. By a further written agreement made on the 13th day of January, 1903, the original contract was modified by striking out the requirement that the work should be completed within four years. Payments were made from time to time upon this agreement to the amount of $8,057.94. In November, 1905, and after the completion of the contract, he presented an itemized statement covering the entire account and showing a balance due of $6,607.94, of which the sum of $650 was earned after his term of office expired. This account was rejected by the board of supervisors. There was no claim or suggestion that the work had not been fully and fairly performed. There was no claim that the statement contained any improper items; nor is there any claim, so far as the proof shows, that the sum paid was exorbitant. The rejection was based upon the opinion of Mr. Bissell, a prominent lawyer of the city of Rochester, which had been furnished to the board upon its request, and which opinion was to the effect that the original contract was void, and that the board of supervisors exceeded its authority in entering into it at all.

Upon the application of the appellant a writ of certiorari was granted on the 12th day of March, 1906, issued to the said board, and a return was filed by it. At the session of the board on December 12, 1906, elaborate resolutions were passed by it, reciting the contract which had been made by the appellant, that the claim was a meritorious one, that the contract had been performed, that the work had been examined and approved by a justice of the Supreme Court "as to its manner and form of execution," who had "certified the amount charged as reasonable therefor," and that "eminent attorneys have expressed an opinion contrary to that of Mr. Bissell as to the legal liability of the county to pay said claim, and it is believed that the interest of the county will be promoted by a termination of the present lawsuit," and thereupon a compromise was recommended at the sum of $5,470.94, and the claim of the appellant was duly audited at that sum and direction given that an order on the county treasurer be issued payable to said defendant and signed by the

chairman and clerk of the board, and that the certiorari proceeding be suspended until the payment of the claim upon which event it be discontinued without costs. It appears that $650 of the claim of the defendant was earned after his term of office expired.

It seems quite apparent from the proof that the work which the defendant was authorized to do was needed for the proper and intelligent use of the deeds recorded in the office of the clerk. Deeds which had been recorded had not been indexed. The old index volumes were nearly filled, and additional ones were needed. They were in distinct volumes, so that an examination, as they then were, made it necessary to look through two sets of indexes. The appellant testified:

"The principal difficulty with them was they were full of errors. They were unreliable."

Some of the leaves containing the indices had been displaced, and it was exceedingly difficult, especially for one not familiar with the office, to make a proper abstract of some of the property in the county. In fact, it does not seem to be seriously contended that the work which the board authorized to be done in pursuance of its contract with the defendant was not just and proper and for the benefit of the county at large.

As already suggested, there is no claim that the defendant Curtis, as well as the board of supervisors, did not enter into this agreement in perfect good faith. There is nothing to indicate that there is any graft, or that any improper method was used to procure the contract. The board of supervisors apparently was confronted with the necessity or, at least, the propriety of having these index books rewritten and new books provided.

We have at the outset, therefore, the proposition that the defendant has faithfully, honestly, and fully performed an agreement entered into in good faith, and he has been paid along year by year a part of his claim and is now seeking to recover the balance, less $1,500 because of the compromise agreement. The county is now using and has the benefit of the work which he faithfully performed either himself or through assistants for whose services he paid.

In this condition of affairs he is entitled to the compensation in accordance with the agreement as adjusted by the compromise, unless there is some insurmountable legal objection to the payment of his claim.

It will be observed that during most of this time the appellant was the county clerk and the custodian of the records. People ex rel. Welch v. Nash, 62 N. Y. 484. As to the work which was performed after the term of office had expired, there seems to have been no controversy between the appellant and the then incumbent of the clerk's office as to his right to the use of the books for the purpose of completing his agreement, so that question is not in the case as in the one just cited.

It is the claim of the respondent, and the court below has so found, that the board of supervisors had no authority to enter into this contract. Section 12, subd. 1, of the county law (chapter 686, Laws 1892),

in defining the general powers of the board of supervisors, provides that they "shall have the care and custody of the corporate property of the county." Section 26 of that law provides:

"Such boards shall have the general charge of the books and records of the county, subject to the legal rights of the officers using or having custody of the same, and shall provide for their safe keeping. They may authorize county officers having the official custody or control of any such books and records, or of maps and papers, to cause copies thereof to be made and certified for the public use; and it shall be their duty to cause the same to be made and certified whenever by reason of age or exposure, or any casualty, the same shall be necessary. Any officers making such transcripts or copies shall be paid such sum therefor as may be just; but such payment shall not exceed a sum to be certified by the county judge, or a justice of the Supreme Court of the judicial district as reasonable therefor. Such board of supervisors shall not accept and pay for any such services, until the work shall be examined and approved as to its manner and form of execution, by such judge or justice; nor shall any board of supervisors order any such work to be done until such judge or justice, after an examination shall certify that such work is necessary for the security and safety of the public records."

The board of supervisors of a county is, of course, a body of limited powers granted to it by the Legislature of the state. Notwithstanding this limitation upon its powers, it possesses inherent authority to perform acts to preserve or benefit the corporate property of the county intrusted to it. People ex rel. Wakeley v. McIntyre, 154 N. Y. 628, 49 N. E. 70; Schenck v. Mayor, 67 N. Y. 44; City of Buffalo v. Bettinger, 76 N. Y. 393; People ex rel. Williams v. Co. Court of Monroe County, 105 App. Div. 1, 93 N. Y. Supp. 452; Woods v. Board of Supervisors, 136 N. Y. 403, 32 N. E. 1011.

In the case last cited this enunciation of the rule is made at page 410, 136 N. Y., at page 1012, 32 N. E.:

"Boards of supervisors represent the county in its corporate capacity and have power to bind it to the extent conferred by statute and when any act of such board is challenged as beyond its power, or not binding upon such county, resort must be had to the specific powers enumerated in the statute which such board may exercise. But in such cases the body is not confined to the exercise of the precise act contained in the grant of power, but, from the nature of the case as well as upon settled principles, it possesses and may exercise such incidental powers, not expressly enumerated or mentioned in the statute, but which are fairly and reasonably necessary and proper in order to give effect to or carry out the powers expressly conferred."

It is the claim of the respondent that section 265 of the real property law (chapter 547, Laws 1896) is applicable. The first sentence of that section is as follows:

"Each recording officer must provide, at the expense of his county, proper books for making general indexes of instruments recorded in his office, and must form indexes therein, so as to afford correct and easy reference to the books of record in his office."

The section then proceeds to define these books and the manner in which the indexes shall be made. I do not believe it was ever contemplated by this section that a clerk, either one paid by salary or who is receiving fees, should be required to make entirely new indexes of the records of the county as a part of his regular work. No fee is provided for work of that kind. He is the official in charge of the

books of record in the office, and slight changes essential to preserve these books and their indices so that they may be relatively useful and available to the employés in the office and to others examining them may fairly be within the range of his official duties. A substantial rewriting of all the index books, which probably will not be needed more frequently than once in a century, is too extensive an undertaking to be expected of him without compensation. The fact that no fee is prescribed for a job of this kind indicates that it was not supposed to be performed by him unless ordered by the board of supervisors, and then as an extra service to which he would be entitled to just remuneration. Livingston county is a rural county, with no city and not a large population, and the recompense of the clerk by the fees accruing to him must be small in amount. The evidence shows without dispute that the amount of his pay for the performance of his contract with the board exceeded $14,500, denoting that the work was too extensive for an official of small compensation to render without any pay.

My conclusion is, therefore, that the board of supervisors did possess the authority, intrusted as they are with the preservation of the county property, to make this contract with the defendant.

Nor do I think the fact that he was county clerk receiving fees for the services rendered in that office brings him within the prohibition of the Constitution that he is to receive no additional compensation for the duties officially imposed upon him. As already stated, the duty of making these indexes, to my mind, was not one of his official duties. It was work outside, and, inasmuch as he was the custodian of the books, the contract was properly made with him. I appreciate that a contract of this kind should be viewed with care, and yet, when services rendered in pursuance of it have been fairly and honestly fulfilled, they should be adequately paid for.

It will be observed that section 26, already quoted, provides that the board of supervisors shall not pay for such work until it has been examined and approved by a judge or justice of the Supreme Court and until a certificate is given after the work has been performed. It appears by the affidavit of Judge Coyne, who was county judge of Livingston county, and by other affidavits in the record, that Judge Coyne did make such examination and did recommend that the new indexes be made. He further says in his affidavit:

"I informed such committee prior to their report to said board, on or about the 11th day of December, 1899, and after such examination, that such work was necessary for the security and safety of the public records and should be done, and, while I have no recollection of filing a certificate in accordance with such conclusion, such necessity in my judgment as such county judge actually existed, and, so far as it was within my power and province to control the performance of such work, I directed the same to be done."

After the work was completed, Judge Nash of the Supreme Court, and long a resident of the county, certified that he had examined "Book A and B Grantors," which was one of the books of indexes made by the appellant for the county, and that he had taken the statement of the deputy clerk as to the other 19 books of indexes; and, by the way, there is no claim that they were not properly indexed

and uniform in their general features to the one which Judge Nash examined, and Judge Nash added:

"The said work of indexing is hereby approved as to the manner and form of the execution thereof. I further certify that the charge at the price per word for such work, in accordance with the terms of the said contract, as the same may be computed, appears to be a reasonable charge therefor."

I think this is a fair compliance with the statute, especially as there is no criticism upon the character of the work done or the number of names indexed.

I think, also, that, even if there was a question as to the authority of the board of supervisors to enter into this contract, the compromise made by it with the defendant as evidenced by its resolutions at its session in December, 1906, reciting all the facts, assigning its reasons therefor, was an adjustment of the pending controversy founded on a new consideration and is enforceable. If there was no doubt that the board of supervisors was absolutely forbidden from making a contract of this kind, probably the subsequent ratification of it and the making of the compromise agreement would not be effective to enable the defendant to receive his pay. It must be observed, however, that there was a sharp disagreement among eminent lawyers as to the power of the board to enter into this contract. It seems to me the weight of authority is in favor of the power in the board. In view of this situation and with the litigation pending, together with the fact that the work had been fully performed, I think the compromise agreement is effective.

The authorities seem to make a distinction in viewing compromises made or ratifications of contracts between those which are absolutely prohibitive by the board and those in which there is a debatable question whether the act done was within the inherent powers of the body doing it. Village of Ft. Edward v. Fish, 156 N. Y. 363, 373, 50 N. E. 973.

In the cases cited by the respondent's counsel, and also by the learned court below in his opinion, they, in the main, involve acts of bodies of exceedingly limited functions or those plainly outside the pale of authority, either specific or implied, and consequently are not applicable to this case.

The complaint alleges that the compensation claimed is exorbitant. There is no finding to that effect and no foundation in the evidence for the charge. If the value of the services rendered were in issue, or if there was evidence tending to show that the board entered into this agreement with another official of the county improvidently, then the claim would call for close scrutiny. So far as we can gather from the record, the claim on its merits is just, and the work was beneficial to the county and has been accepted by it.

The judgment and order should be reversed.

Judgment and order reversed on the law and facts, and a new trial granted, with costs to appellant to abide event. All concur, except McLENNAN, P. J., and WILLIAMS, J., who dissent on opinion of Benton, J., delivered at Equity Term.