## FRANKLIN COUNTY v. HENRY.

(Supreme Court, Trial Term, Franklin County. March 24, 1913.)

1. PRISONS (§ 18*)—OFFICERS—SALARIES—ADDITIONAL COMPENSATION.

Under Const. art. 3, § 28, prohibiting any board of supervisors from granting any extra compensation to any public officer, and County Law (Consol. Laws, c. 11) §§ 92, 96, providing that the sheriff shall receive in the county jail every person lawfully committed to his custody, and Laws 1902, c. 29, making the office of sheriff of a county a salaried office and fixing the salary at a specified sum and maintenance for him and family, and providing that no allowance shall be made for any services, etc., a sheriff, rendering extra services to Chinese prisoners committed to jail by United States courts, is not entitled to compensation therefor, though the board of supervisors may, in a proper case, employ assistance to care for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prisoners requiring special care or assistance beyond that which the sheriff must by law render.

[Ed. Note.—For other cases, see Prisons, Cent. Dig. §§ 47–56; Dec. Dig. § 18.*]

2. COUNTIES (§ 206*)—COMPENSATION—SALARIES—ADDITIONAL COMPENSATION.

The fact that moneys illegally paid to a sheriff for services rendered were audited to the county treasurer in his bills by the board of supervisors does not legalize the payment to the sheriff, nor prevent their recovery in an action by the county.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 322, 323, 325–330; Dec. Dig. § 206.*]

Action by the County of Franklin against George S. Henry. Judgment for plaintiff.

Kellas, Genaway & Kellas, of Malone, for plaintiff.
Bryant & Lawrence, of Malone, for defendant.

BORST, J. [1] During the period from January 1, 1906, to January 1, 1909, the defendant was sheriff of Franklin county, and received his regular yearly salary of $1,200 as fixed by statute. The particular charge made against him in this action is that during that period he presented bills, aggregating in amount $880.08 to, and which were paid by, the county treasurer of Franklin county, for caring for Chinese prisoners at the rate of 50 cents a week for each Chinaman committed to his custody and detained by him in the county jail. These bills were not audited by the board of supervisors, except the county treasurer presented his report to the board each year, and in which these different amounts paid the sheriff appear as "Sheriff, extra care of Chinese," and they were audited and allowed as a payment made by the county treasurer to the sheriff. Large numbers of Chinese prisoners, during the term of office of the defendant, were committed to his custody by the United States court. They apparently required and received from the defendant special attention in the way of being allowed certain liberties in the cooking of their own food and the taking of them outside of the jail for exercise from time to time. In the county of Franklin during the times in question, the county boarded the prisoners, the sheriff performing the work and the county furnishing the provisions. In 1902, the county had offered to board the United States prisoners at the rate of $2.50 per week each. An arrangement was, however, made with the county by parties interested that $3 per week should be paid for the board of the Chinese prisoners committed by the United States courts. In 1903 the following resolution was adopted by the board of supervisors:

"That the sum of $500, or so much thereof as may be necessary, be appropriated for the purpose of paying an additional guard or jailer to assist in caring for the Chinese prisoners in said jail, which guard or jailer he is hereby authorized to hire, if necessary, in the same manner as the other officers, provided for in said subdivision four of this report. That the sheriff of Franklin county be allowed in addition to the above help and his salary, the sum of fifty cents per week for the care of each of the United States Chinese persons, which shall be confined in said jail from the date hereof, to be paid by the county treasurer out of the moneys received from the United States for the board of such persons."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thereafter 50 cents per week from the amount paid to the county for the board of each Chinaman was drawn from the county treasurer by defendant's predecessor, and this was continued by defendant, it being claimed by them that they were entitled to it by virtue of the resolution and as pay for the extra care they gave the Chinese prisoners, and that it had been paid to the county for that purpose. By section 92 of the County Law (Consol. Laws, c. 11):

"Each sheriff shall receive and safely keep, in the county jails of his county, every person lawfully committed to his custody for safe keeping."

By section 96 of the same law a sheriff is required to receive and keep in his jail every person duly committed thereto, for any offense against the United States, by any court or officer of the United States, until he shall be duly discharged. By chapter 29, Laws 1902, the office of sheriff of Franklin county was made a salaried office. His salary was fixed by that act at $1,200, and in addition maintenance for himself and family. Section 2 provides:

"Such salary and maintenance shall constitute the whole compensation which shall be allowed or paid to or received by said sheriff for all the official services which may be performed as sheriff in his attendance upon any and all courts of record held in the county of Franklin, and for all services performed by him under this act or for the United States of America, the state of New York, or the county of Franklin, or chargeable thereto or which he is or shall be, required or authorized by law to perform by virtue of his office as such sheriff; and no compensation, payment or allowance shall be made to him or received by him for his own use for any such services except the aforesaid maintenance and salary and the fees specified in section ten of this act."

Section 10 of the act provides that the sheriff may take and receive in civil causes for his services and disbursements rendered therein the fees allowed by law. And it is then provided:

"But this section shall not permit said sheriff to retain to his own use any moneys paid for the care and custody and board of Chinese persons held under the Chinese Exclusion Law."

Section 3 of the act provides:

"All fees, emoluments and perquisites which such sheriff shall charge or receive, * * * as a peace officer, * * * and for all other services for the United States of America, or the state of New York, or for the county of Franklin, for which fees are paid, including the moneys he may receive for the board, custody or care of United States or other prisoners, shall belong to the county of Franklin. * *. * This section shall apply to Chinese persons committed to his custody under the Chinese exclusion act."

Section 12 of the act also provides:

"Any officer referred to in this act who shall receive to his own use, * * * any fee, perquisite or emolument contrary to the provisions of this act, * * * declared to belong to the county of Franklin, shall be guilty of a misdemeanor, and be liable to said county in a civil action for any moneys so received."

The Constitution of the state (article 3, § 28) contains this provision:

"The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor."

Extra services rendered by the sheriff on behalf of the Chinese committed to his custody did not authorize nor permit him to receive compensation therefor beyond that provided by the act fixing his salary. The board of supervisors were prohibited, by the Constitution and the act making the office of sheriff of Franklin county a salaried one, from adding to his salary—

"the sum of fifty cents per week for the care of each of the United States Chinese persons which shall be confined in said [Franklin County] jail."

The resolution of the board of supervisors of 1903 was passed without authority, and did not authorize the sheriff to take any of the moneys allowed thereby. Undoubtedly the board of supervisors in a proper case could employ help or assistance to care for prisoners in the jail who required such care or assistance beyond that which the sheriff was required by law to render. People v. Gallup, 65 How. Prac. 108; Wadsworth v. Sup. Livingston Co., 139 App. Div. 832, 124 N. Y. Supp. 334.

Independent of the provisions of the Constitution of the state, the act fixing the sheriff's salary is most explicit in its terms against his receiving any further fee, perquisite, or emolument beyond that provided by the act. All pay for his services in connection with Chinese prisoners, it is expressly provided by that act, is limited to his salary. Counsel for the defendant with considerable ingenuity argue that the services in question rendered were not such as he was required to perform as sheriff for the salary given him by law. The fault in this argument is that the services which defendant did perform he performed as sheriff. He was to "safely keep" the prisoners committed to his care, and all his acts with reference to those prisoners were in the performance of his duty as sheriff. He could not say:

"To be sure, I have these Chinese in my care in the jail as sheriff. Now I will take them out for exercise and when I have them outside the jail, taking such exercise, I will 'safely keep' them as an individual and not as sheriff."

The title of the office of sheriff having been vested in defendant, he could not divest himself of such office, during the term for which he should hold it, for any purpose. The intent of the act which fixed his salary of sheriff is that during his term of office for any service which he might render in connection with that office, he is to be limited to the salary and to that alone for his compensation.

"A salary officer cannot rightfully claim compensation extra his salary for performing a new duty or one imposed by the Legislature since the salary was provided." People v. Sup N. Y., 1 Hill, 362; People v. Mutual Union Tel. Co., 2 McCarty Civ. Proc. R. 295; Palmer v. City of N. Y., 2 Sandf. 318.

"No compensation is recoverable" from a municipal corporation by one of its officers "for the performance of a public service, or of official duties, unless it is given by law." Haswell v. Mayor, 81 N. Y. 255.

In England formerly a sheriff received a fixed salary from the crown, and it was held that he was not permitted to receive any other compensation for his services, either for extra trouble or otherwise, Sherley v. Packer, 1 Row. R. 313; and after it was found expedient to allow them to take fees for particular services, the common law still adjudged them to be guilty of extortion if they took anything more.

In that early day, it became the settled law that a promise to pay money to a public officer for doing that which the law would not suffer him to take anything .for, or to pay more than was allowed by law, was void. For, as Sergeant Hawkins says, if once it should be allowed that such promises could sustain an action, the people would be quickly given to understand how kindly they would be taken, and happy would that man be who could have his business well done without them. 1 Hawk. P. C. ch. 68, § 4.

When the defendant entered upon his term as sheriff he took the constitutional oath of office to discharge its duties "according to the best of my ability." Can he claim pay for extraordinary ability or effort exerted by him beyond his "best ability"? It is said there was a day when chancellors and judges made a business transaction of receiving gratuities from parties for "expediting," making extraordinary efforts to dispose of their suits. These gratuities were not considered as bribes for perverting justice, but merely compensation for extraordinary efforts to administer it beyond what an officer was strictly bound to make. For this offense of receiving "gratuities" for making "extraordinary" efforts to discharge his official duty, Lord Bacon was impeached and disgraced, although the fairness of his decisions was such that never one of them was reversed.

The regular routine of public office may vary, extraordinary and unusual services may be demanded of an official during his term of office, but this is the price of holding public place. So long as such services are those which he has authority to perform as such official, the compensation fixed or given him for the performance of its duties is the limit of his right to pay therefor.

The defendant was undoubtedly honest in his belief that he was entitled to these moneys when he took them from the county treasurer, and that official undoubtedly acted under the same belief when he paid them to the defendant. Each of these officials had the support of the resolution of the board of supervisors of 1903 for their action. But good faith and honest intention will not legalize a wrongful, though mistaken, diversion of public funds. To the credit of the defendant it must be said that he took the moneys openly, under the demand made upon the county treasurer that he was entitled to them for services performed. He was mistaken as to his rights, and must return the money to the county for the benefit of the people.

[2] The fact that the moneys in question were audited to the county treasurer in his bills by the board of supervisors does not legalize their payment to the defendant, nor prevent their recovery in this action. People v. Southerland, 207 N. Y. 22, 100 N. E. 440; Haswell v. Mayor of N. Y., 81 N. Y. 255.

A decision may be prepared in accord with this opinion.