THE VILLAGE OF FORT EDWARD, Respondent, *v.* WILBUR F. FISH, Appellant.

1. VILLAGE WATER SUPPLY — DISPOSAL OF BONDS BY COMMISSIONERS — "PAR VALUE." In the provision of the Village Water Supply Act (L. 1875, ch. 181, § 8), that the bonds shall not be disposed of by the water commissioners "at less than the par value thereof," the words "par value" mean a value equal to the face of the bonds.

2. FACE VALUE OF BONDS. When village water bonds draw interest from their date, and are disposed of by the commissioners after their date, with accrued interest attached, their face or par value, within the meaning of the statute, is the sum of the principal and the accrued interest.

3. CONTRACT FOR SALE OF BONDS AT LESS THAN PAR VALUE, ABSOLUTELY VOID. Where village water bonds draw interest from their date, a contract made by the water commissioners to sell, at a later date, certain of the bonds, together with the interest accrued thereon, for the amount of the principal only, provides for a sale of the bonds "at less than the par value thereof" in violation of the statute, and is therefore absolutely void.

4. BURDEN RESTING ON PERSON NEGOTIATING WITH COMMISSIONERS FOR BONDS. A person entering into a contract with village water commissioners for the sale to him of village water bonds is obliged, at his peril, to inquire into the authority of the commissioners to make the contract, and is bound to notice the limitation of their powers.

5. VILLAGE OF FORT EDWARD — LIMITED POWERS OF WATER COMMISSIONERS. Under the Village Water Supply Act (L. 1875, ch. 181, amd. L. 1881, ch. 175) and the act special to the village of Fort Edward (L. 1893, ch. 30), the trustees of that village, when acting as the board of water commissioners, acted as agents with limited powers, to whom the principle of strict construction is applicable; and they had no power to make a contract or to pay money, unless it was expressly or impliedly authorized by statute.

6. NO POWER CONFERRED BY STATUTE UPON WATER COMMISSIONERS TO COMPROMISE CLAIM OF VENDEE UNDER VOID CONTRACT FOR SALE OF BONDS — RECOVERY BY VILLAGE FROM VENDEE OF MONEY RECEIVED FROM COMMISSIONERS. No power, either express or implied, was conferred by statute upon the water commissioners of the village of Fort Edward, after having made a contract for the sale of water bonds which was prohibited by statute and void, to make a compromise agreement with the vendee in such contract in settlement of its non-execution, or to pay him money of the village in satisfaction of such agreement; and the village was not bound by such unauthorized acts, but can recover from the recipient the money so paid.

7. NO IMPLIED POWER IN WATER COMMISSIONERS SPRINGING FROM NECESSITY. Where village water commissioners have entered into a void contract for the sale of water bonds at less than their par value, and the bonds are marketable, the fact that a third party, who is negotiating for the bonds at a premium, hesitates to take them, not on account of any lack of confidence in the bonds but owing to a reluctance to interfere with the prior vendee, creates no necessity, and therefore confers upon the commissioners no implied power springing from necessity, to compromise the claim of the prior vendee on the non-execution of his void contract, and to pay him money of the village in satisfaction thereof.

8. DOCTRINE OF VOLUNTARY PAYMENT NOT APPLICABLE. The doctrine of voluntary payment does not apply to a municipality, where its agent has paid out its money without power, to one who accepts it with knowledge; and hence that doctrine cannot be invoked to prevent the recovery by a village of its money from one who has received an illegal and unauthorized payment thereof from village water commissioners.

9. VILLAGE NOT IN PARI DELICTO. Where the funds of a village have been used by its water commissioners in making an illegal payment without its authority, so that the payment was not really made by the village, it is not in *pari delicto* with the recipient of the illegal payment.

*Village of Fort Edward* v. *Fish*, 86 Hun, 548, affirmed.

(Argued May 2, 1898; decided June 7, 1898.)

APPEAL from an order of the late General Term of the Supreme Court in the third judicial department, entered May 15, 1895, reversing a judgment in favor of defendant entered upon a decision of the court after a trial without a jury, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John F. Parkhurst* for appellant. The contract of July 20, 1893, was valid and binding on both parties, and could have been enforced by the defendant. (L. 1881, ch. 175, § 2; *Lehigh Appeal*, 129 Penn. St. 405; *People* v. *Stephens*, 71 N. Y. 549; *Brooklyn H. R. R. Co.* v. *City of Brooklyn*, 152 N. Y. 250; *Meech* v. *City of Buffalo*, 29 N. Y. 198, 219; *Mayor, etc.*, v. *Sands*, 105 N. Y. 218; Sedgwick Const. & Stat. Laws, 228, 245; *Stief* v. *Hart*, 1 N. Y. 20; 1 Kent's Com. 404; *People ex rel.* v. *McIntyre*, 154 N. Y. 628, 632; Reese Ultra Vires, 39, 239, 249; *Curtis* v. *Gokey*, 68 N. Y.

300 ; Cooley's Const. Lim. [2d ed.] 188 ; *Town of Ontario* v.
*Union Bank*, 21 Misc. Rep. 770 ; *Yesler* v. *Seattle*, 1 Wash.
St. 308.)    The plaintiff had power to compromise Fish's
claim.    (*Bd. Suprs. Orleans Co.* v. *Bowen*, 4 Lans. 24 ; *Hills*
v. *Peekskill S. Bank*, 101 N. Y. 490 ; *Gould* v. *Town of
Oneonta*, 71 N. Y. 298, 308 ; *Suprs. of Chenango* v. *Birdsall*,
4 Wend. 453 ; *New Albany* v. *Burke*, 78 U. S. 96 ; Dillon on
Mun. Corp. §§ 448, 477 ; Tiedeman on Mun. Corp. § 142 ; 1
Beach on Pub. Corp. 638 ; *People* v. *San Francisco*, 27 Cal.
655 ; *People* v. *Coon*, 25 Cal. 648 ; *Grimes* v. *Hamilton Co.*, 37
Iowa, 290.)   The board of water commissioners, representing the
plaintiff, had ample authority to make the compromise in ques-
tion.   (L. 1875, ch. 181, § 8 ; L. 1893, ch. 30 ; *Gould* v.
*Town of Oneonta*, 71 N. Y. 298, 308 ; *Fleming* v. *Vil. of Sus-
pension Bridge*, 92 N. Y. 368 ; *People* v. *Stephens*, 71 N. Y.
549 ; *Meech* v. *City of Buffalo*, 29 N. Y. 198 ; *Kramrath* v.
*City of Albany*, 127 N. Y. 575 ; *Town of Queensburg* v.
*Culver*, 19 Wall. 83 ; *Motz* v. *Detroit*, 18 Mich. 495 ; *Ex
parte Mayor of Albany*, 23 Wend. 277.)   The contract of
August fourth was a valid compromise, founded upon a suf-
ficient consideration and binding upon the plaintiff.   (*O. P.
R. R. Co.* v. *Forrest*, 128 N. Y. 83 ; *Zoebisch* v. *Von Minden*,
120 N. Y. 406, 418 ; *Wahl* v. *Barnum*, 116 N. Y. 87, 95 ;
*Crans* v. *Hunter*, 28 N. Y. 389 ; *White* v. *Hoyt*, 73 N. Y. 505,
515 ; *Wehrum* v. *Kuhn*, 61 N. Y. 623 ; *Stewart* v. *Ahrenfeldt*,
4 Den. 189 ; *Dunham* v. *Griswold*, 100 N. Y. 224, 226 ;
*Quincey* v. *White*, 63 N. Y. 370, 376 ; *Feeter* v. *Weber*, 78 N.
Y. 334, 337 ; *Secor* v. *Clark*, 117 N. Y. 350 ; *Adams* v.
*Sage*, 28 N. Y. 103, 110, 111 ; *Dovale* v. *Ackermann*, 2
App. Div. 404 ; *Mowatt* v. *Wright*, 1 Wend. 356.)   There
was no testimony tending to show duress in the execution
of the compromise with Fish.   (*Secor* v. *Clark*, 117 N. Y.
353 ; *French* v. *Shoemaker*, 14 Wall. 314 ; *Oceanic S. N.
Co.* v. *Tappan*, 16 Blatchf. C. C. 296 ; *Radich* v. *Hutchins*,
95 U. S. 210 ; *Goebel* v. *Linn*, 47 Mich. 489 ; *Bailey* v. *Buel*,
50 N. Y. 662 ; *Hess* v. *Cohen*, 20 Misc. Rep. 333 ; *Silliman* v.
*U. S.*, 101 U. S. 465 ; *Hackley* v. *Headley*, 45 Mich. 569.)

The plaintiff is estopped by its own acts to maintain this action. (*Cox* v. *Mayor, etc.,* 103 N. Y. 519, 526; *Peterson* v. *Mayor, etc.,* 17 N. Y. 453; *Albany City Nat. Bank* v. *City of Albany,* 92 N. Y. 363; 2 Story's Eq. Juris. § 1539; *Weston* v. *City of Syracuse,* 82 Hun, 67, 73; *Abbott* v. *Draper,* 4 Den. 51, 53; *Gould* v. *Town of Oneonta,* 71 N. Y. 304; *Pickslay* v. *Starr,* 149 N. Y. 432; *Flynn* v. *Hurd,* 118 N. Y. 19; *People* v. *Stephens,* 71 N. Y. 559; *Supervisors of O.* v. *Briggs,* 2 Den. 26; *People ex rel.* v. *Supervisors,* 65 N. Y. 230; *Vaughn* v. *Vil. of Port Chester,* 135 N. Y. 463; *Tripler* v. *Mayor, etc.,* 125 N. Y. 617, 625, 626; *Redmond* v. *Mayor, etc.,* 125 N. Y. 632, 636; *Atlantic D. Co.* v. *James,* 94 U. S. 207; *Grymes* v. *Sanders,* 93 U. S. 55.) The judgment and order of the General Term should be reversed and the judgment of the Special Term affirmed, with costs to the defendant in all the courts. (*Abbott* v. *Draper,* 4 Den. 53.)

*Edgar T. Brackett* for respondent. The contract of July 20, 1893, entered into by the board of water commissioners with the defendant is invalid. (L. 1893, ch. 30, § 1; L. 1881, ch. 175, § 8; *State of Illinois* v. *Delafield,* 8 Paige, 527; *Hogg's Appeal,* 22 Penn. St. 479–489; 26 Wend. 192–225; 2 Hill, 159, 171, 172; *Evans* v. *Tillman,* 17 S. E. Rep. 49–53; *People* v. *L. I. R. R. Co.,* 9 Abb. [N. C.] 181–196; *Excelsior G. B. Co.* v. *Stayner,* 25 Hun, 91–95; *Barton* v. *Port J. & U. F. P. R. Co.,* 17 Barb. 397–404; Pom. on Cont. [2d ed.] §§ 280, 281; *Routledge* v. *Grant,* 2 Carr. & P. 564; *King* v. *Warfield,* 67 Md. 246–248; *M. & B. P. R. Co.* v. *Snediker,* 18 Barb. 317–319; *Tucker* v. *Woods,* 12 Johns. 190; *Rafolovitz* v. *American T. Co.,* 73 Hun, 87; *C. & G. E. R. Co.* v. *Dane,* 43 N. Y. 240.) Given the invalidity of the contract of July twentieth, it follows that the contract of August fourth was without any consideration, and that the subsequent attempted audit and the payment by the water commissioners of the plaintiff to the defendant of $1,750 was equally without any consideration, was simply an unauthorized payment of the plaintiff's funds, and the plaintiff can recover the same back from the defendant in this action.

(*Bd. Suprs.* v. *Ellis*, 59 N. Y. 620 ; *Lyddy* v. *Long Island City*, 104 N. Y. 218, 223 ; *People ex rel.* v. *Gleason*, 121 N. Y. 631–635 ; *People* v. *Fields*, 58 N. Y. 491 ; *Surdam* v. *Fuller*, 31 Hun, 500–502 ; *People* v. *Starkweather*, 10 J. & S. 325–334 ; *McGinnis* v. *Mayor*, 5 Daly, 416.) The money paid to the defendant was the property of the plaintiff, the water commissioners being mere agents of the municipality, and, if the payment was illegal, the plaintiff is the proper party to recover it back. (*Deyoe* v. *Vil. Saratoga Springs*, 1 Hun, 341 ; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264–267 ; *Collins* v. *Vil. Saratoga Springs*, 70 Hun, 583 ; *Fleming* v. *Vil. Suspension Bridge*, 92 N. Y. 368–372.) The board of water commissioners had no authority to make the contract of August fourth with the defendant, and the contract so made and the subsequent audit and payment made thereunder are void for want of power in the commissioners. (L. 1881, ch. 175, § 8 ; *Collins* v. *Vil. Saratoga Springs*, 70 Hun, 583 ; 140 N. Y. 637 ; *Fleming* v. *Vil. Suspension Bridge*, 92 N. Y. 368 ; *Marsh* v. *Fulton Co.*, 10 Wall. 676–684.) No demand was necessary prior to the commencement of the action. (*Mills* v. *Mills*, 115 N. Y. 80–85 ; *Matter of Cole*, 34 Hun, 320 ; *Sharkey* v. *Mansfield*, 90 N. Y. 227 ; *Eno* v. *Woodworth*, 4 N. Y. 249, 253 ; *Utica Bank* v. *Van Gieson*, 18 Johns. 485, 486 ; *Stacy* v. *Graham*, 14 N. Y. 492–497.) The plaintiff should have been permitted to prove its condition at the time the defendant blocked the sale of the bonds to the comptroller ; that large sums of money were due to the contractors who were clamoring for their money, and that the village was in great need of funds, and it was error for the court to exclude such proof thus offered by the plaintiff. (*Scholey* v. *Mumford*, 60 N. Y. 498–501 ; *McPherson* v. *Cox*, 86 N. Y. 472, 478, 479 ; *Harmony* v. *Bingham*, 12 N. Y. 99, 112, 113.)

VANN, J. By this action the plaintiff sought to recover the sum of $1,750 alleged to have been paid by its board of water commissioners to the defendant without authority under the following circumstances :

The plaintiff is a municipal corporation with a board of trustees, who, in 1893, pursuant to the provisions of certain statutes, organized themselves into a board of water commissioners and prepared an issue of coupon bonds amounting to $97,000, all dated May 1, 1893, and drawing interest at the rate of four per cent per annum from that date. (L. 1875, ch. 181; L. 1881, ch. 175; L. 1893, ch. 30.)

On the 20th of July, 1893, the water commissioners agreed in writing with the defendant to sell him fifty bonds of said issue, each being for $1,000, together with all interest accrued thereon, then amounting to the sum of $444.44, for $50,000, but it was stipulated that said agreement was not to be binding upon him unless his attorneys should "approve of the regularity and validity of said bonds in writing." The attorneys on examining the bonds and the proceedings upon which they were based found some features which they considered defects, but which they thought might be cured. On the 27th of July they wrote to the water board that they were unable at that time, upon the papers before them, to advise that the proceedings were regular. Among other things they said: "As in our opinion it is very questionable whether in the present instance such requirements have been met, we feel compelled to advise against the validity of the bond issue."

In the meantime the water commissioners had received a more favorable offer from the comptroller of the state, and on the same day that they received said letter they arranged with him to take all of the bonds then unsold, including those mentioned in the contract with the defendant, at a profit of $6,000 over the face value of the bonds. They telegraphed to the defendant their election to withdraw from the contract and he answered demanding "delivery of bonds as contracted." On the fourth of August he met a representative of the commissioners at the comptroller's office and told him that he waived all defects and that he wanted the bonds, or a share of the profits on them if they were sold to the comptroller. The water commissioners, through their representative, insisted that the contract was conditional and that under the circum-

stances they were released from it. The comptroller virtually refused to take the bonds unless a satisfactory arrangement was made with the defendant so that he would get out of the way. After some negotiation a compromise was arranged, which was expressed in a contract signed by the defendant and by the president of the board. Said contract, dated August 4th, 1893, recited that a dispute had " arisen concerning the fulfillment of a certain agreement relative to the sale by said board and the delivery of certain water bonds to said Fish," and " for the purpose of settling said dispute the said board " agreed " to pay and the said Fish to accept the sum of $1,750 in full settlement, payment and satisfaction and discharge of all claims and liabilities of the said water commissioners to the said W. W. Fish for and on account of the failure of said board to deliver said bonds to said Fish under the terms stated in said agreement, said sum to be paid within five days." The comptroller thereupon accepted the bonds and paid a premium on them at the rate previously agreed upon. On the same day, the president in behalf of the committee in charge, reported to the full board the facts concerning the compromise and settlement with the defendant. The report was accepted but no other action was taken except that the thanks of the board were extended to the committee. On August 10th the water commissioners paid the defendant the sum of $1,750 as required by the compromise agreement. In June, 1894, the plaintiff commenced this action to recover from the defendant said sum with interest from the date of payment, upon the theory that it was made without lawful authority. Upon the trial before the court without a jury the foregoing facts appeared with others, without dispute, and, no evidence having been given by the defendant, the presiding justice dismissed the complaint on the ground that the plaintiff had failed to establish a cause of action. Upon appeal to the General Term the judgment was reversed and the defendant now comes here, having given the usual stipulation for judgment absolute.

47

The legislature enacted. that the bonds should not be " disposed of by such commissioners at less than the par value thereof." (L. 1875, ch. 181, § 8.) The first question presented for decision is, what is the meaning of the words " par value " as thus used in the statute. " Par " means equal, and par value means a value equal to the face of the bonds. A sale of bonds at par is a sale at the rate of a dollar in money for a dollar in bonds. This is the accepted meaning of the term in the mercantile world, which the legislature is presumed to have adopted in enacting the statute. The question is not open to discussion in this state, for it was settled more than fifty years ago by the noted case of *State of Illinois* v. *Delafield* (8 Paige, 527; 26 Wend. 192; 2 Hill, 159). In that case it was held that where the legislature of a state authorized its officers to borrow moneys for the use of the state and to sell its bonds for that purpose, but not for less than their par value, a sale of bonds which were to draw interest from the time of sale, but which were to be paid for in future installments only and without interest, was a sale of such bonds for less than their par value, and that they were not binding upon the state because its agents had exceeded their authority. When the matter was before the chancellor he said : " If the officers could issue bonds which would draw interest immediately, and still be allowed to give the purchaser of such bonds the use of the money loaned for ten months, without interest, they could with the same propriety, so far as the statutory prohibition was concerned, have sold the bonds upon a contract that they should be delivered and draw interest immediately, and that the purchaser might advance the nominal amount of the bonds in installments of from one to five years ; as the same might be wanted by the complainant to carry on her public works. * * * The very idea of a sale of a bond, or draft, or other security for the payment of money, *at par*, is that it is to be sold dollar for dollar of the amount due and payable thereon. * * * Such is the popular or generally received meaning of the terms *par* or *par value*, and this was unquestionably the sense in which these terms were

used by the legislature of Illinois, in the statute under which
the officers of the state were authorized to issue these bonds."
When the case reached the Court of Errors, Judge BRONSON
said that "if par value does not mean in this case a dollar in
money for every dollar of security, the wit of man cannot tell
us what it does mean." Senator VERPLANCK, referring to the
same subject, said: "If the payment be now made to the
state in New York funds, the '*par*' value would, in the common
language of the stock market, as well as the natural interpre-
tation of the phrase, independent of usage, be the amount due
on the face of the certificate. But the actual sale is made on
terms which, on the $300,000 sale, gave the appellant an advan-
tage of one hundred and three days' interest, and on the
$283,000 sale, of above ten months. I cannot, upon any
understanding of the words, consider this a sale at par value,
any more than if there had been an undisguised discount at the
same rate."

In the case now before us the face value of the bonds con-
tracted to be sold by the water board to the defendant included
accrued interest and amounted to $50,444.44, whereas the
contract price was but $50,000. The executory contract,
therefore, provided for a sale of the bonds "at less than the
par value thereof" in violation of the statute and was abso-
lutely void because it was expressly prohibited by law.
Neither party was bound thereby, and it could not be the
subject of a valid claim by either against the other. (*Dela-
field* v. *Illinois, supra; Hodges* v. *City of Buffalo*, 2 Den.
110; *Ford* v. *Mayor*, etc., 63 N. Y. 640; *Parr* v. *Presi-
dent*, etc., 72 N. Y. 463.) It was not void simply as *ultra
vires*, but as a forbidden act. The defendant was obliged, at
his peril, to inquire into the authority of the commissioners to
make the contract and was bound to notice the limitation of
their powers. (*Supervisors of Rensselaer Co.* v. *Bates*, 17
N. Y. 242, 246; *McDonald* v. *Mayor*, etc., 68 N. Y. 23;
*Smith* v. *City of Newburgh*, 77 N. Y. 130; Dillon on Mun.
Corp. § 447.)

The second question presented is whether the water board

had power to compromise a claim based on said void contract and to pay the amount agreed upon from the proceeds of the bonds? If the question arose between individuals, with no limitation upon their power to make contracts, there can be no doubt that the substitution of the second agreement in satisfaction of the first and the voluntary execution of the former would have been valid as an accord and satisfaction. (*McCreery* v. *Day*, 119 N. Y. 1.) The water commissioners, however, had no power to make a contract or to pay money unless it was expressly or impliedly authorized by statute. They were not a corporation, nor were they acting as public officers, or as trustees of the plaintiff, but as water commissioners, or as agents with limited powers, and the principle of strict construction is to be applied. (*Fleming* v. *Village of Suspension Bridge*, 92 N. Y. 368, 372.) An examination of the statutes already cited shows that the express powers of the water commissioners were confined to acquiring lands and constructing water works for the village, but in order to do this they also had power to borrow money on the credit of the village and to issue bonds therefor and to use the money so borrowed for the purpose of supplying the village with water, but not for any other purpose. They clearly had no express power to make a compromise agreement with the defendant or to pay the money of the plaintiff, borrowed to construct a water plant, in satisfaction thereof.

What were their implied powers? Having made a contract that was expressly prohibited by law, had they implied power to get rid of that contract by a compromise? Implied power can be inferred only from the general scope of the actual power and the necessity of doing something essential to the efficient exercise thereof. The actual power was to borrow money by issuing and selling bonds at not less than par. The express power to issue bonds involved the implied power to pay for engraving, printing and the like. The express power to sell bonds doubtless carried with it the implied power to pay counsel for an opinion as to the validity of the bonds, as was done in this case, and possibly to pay a commis-

sion to brokers for selling the bonds. These expenses were incidental to the duty imposed, and fairly came within the scope of the main power. But from what is the power to make the compromise in question to be implied? The contract was void and could not be enforced. There was no implied power to get rid of it, for, being void, it could not stand alone in court, and any effort to enforce it would meet with defeat. " No cause of action can arise from an undertaking prohibited by statute, whether the contract is *malum in se*, or *malum prohibitum*." (*Peck* v. *Burr*, 10 N. Y. 294, 299.)

Still, as it is said, it prevented an advantageous sale to the comptroller. The bonds were marketable. The attorney-general had pronounced them valid. The comptroller was willing to buy them at a premium, and the defendant was eager to take them. The hesitation of the comptroller was not owing to lack of confidence in the bonds, but simply to a reluctance to interfere with the defendant's bargain. The water commissioners were not forced to come to terms with the defendant in order to sell their bonds. No implied power, therefore, sprang from necessity, for no necessity existed. Moreover, a corporation has no power to compromise a contract which it had no power to make, unless it is to the extent of eliminating the illegal or unauthorized elements. (Dillon on Mun. Corp. §§ 448, 477.) The contract to sell the bonds below par was not only unauthorized but prohibited, and, therefore, constituted no consideration for a new contract. It was made without power, in defiance of a statutory command, and it did not even have the excuse of a stress of circumstances. It was not merely voidable, but void *ab initio*. Even if the village itself, acting through its trustees, who are public officers, would have had power to compromise any suit brought by the defendant upon said contract, still the water commissioners, who are mere agents, had no such power. They could neither compromise, nor agree to compromise, a claim against the village founded on their own illegal act.

The doctrine of voluntary payment cannot be invoked by

the defendant to enable him to retain the money of the plaintiff that was illegally paid to him.  That doctrine applies to individuals who have power to do as they wish with their own, but it does not apply to an agent of a municipal corporation, who pays out its money without power, to one who accepts it with knowledge.  The statute forbade the payment from the funds of the water board, and action forbidden by statute is void.  A void act is no act, and a void payment is no payment.  Such a payment is not voluntarily made by the corporation, but by its agent, in excess of his authority and in defiance of its rights.  It is not the act of the corporation itself, but of one, without authority, who assumed to act for it.  (*People v. Fields,* 58 N. Y. 491, 505; *Board of Supervisors v. Ellis,* 59 N. Y. 620; *Lyddy v. L. I. City,* 104 N. Y. 218; *People ex rel. Coughlin v. Gleason,* 121 N. Y. 631; *Board of Supervisors v. Van Clief,* 1 Hun, 454; *Surdam v. Fuller,* 31 Hun, 500.)  In *People v. Fields* (*supra*) the court said: "The payment was made and received without any lawful power in the comptroller to make it.  The defendant is chargeable with knowledge of this.  It was a payment by an agent, who had no authority as such, to make it.  It was, then, no payment by the principal in mistake of law or ignorance of fact.  The principal, in legal view, had no part in the payment, and it was made against its will.  It was equivalent to an appropriation by the appellant of the moneys to his own use, with the acquiescence and help of the officer of the city, who was authorized to pay them out no otherwise than in accordance with law.  He having made the payment unlawfully, it was an act not within the scope of his agency and does not bind his principal.  (*U. S. v. Bartlett,* Davies, 9; *Stevenson v. Mortimer,* Cowp. 805; *Taylor v. Plumer,* 3 M. & S. 562.)  There is, for these reasons, a right of action somewhere against the appellant, to recover the whole or a part of these moneys."  In *Board of Supervisors v. Ellis* (59 N. Y. 620) it was held that the payment of an account not legally chargeable to the county, although duly audited by the board of supervisors, is not a voluntary pay-

ment by the county, but an unauthorized act of its agents, and that an action would lie at the suit of the county to recover back the moneys paid. So, in the case before us, the payment was in no sense voluntary, because it was not made by the village, but by the unauthorized agents of the village. The plaintiff received no benefit from the act, and hence there was no occasion for restitution and no ratification by retaining the benefits, as in many of the cases cited by the defendant. The parties were not in *pari delicto*, because the plaintiff did not really make the payment, but its funds were used for that purpose without its authority.

It is a matter of grave public concern to protect municipal corporations from the unauthorized and illegal acts of their agents in wasting the funds of the taxpayers. It is only with the utmost difficulty that municipal officers and agents can be kept within the bounds of their authority now, but once let it go forth as the settled law of the state that an illegal contract can become the basis of a lawful compromise, entered into between the contractor and an agent guilty of the illegal action, and a new door will be opened to municipal spoliation. If a paving contract is let to the highest instead of the lowest bidder, in violation of a statute requiring competition, a compromise with the contractor, followed by payment of a gross sum equal to all the profits that he could have made on the contract if executed, should not enable him to keep the spoils and defy the public. Sound public policy will not permit the courts to countenance this dangerous method of evading a statute, for it will always be done under the claim of good faith, and the fraud beneath will be hard to discover.

For these reasons I think the order appealed from should be affirmed, and that judgment absolute should be rendered against the defendant on his stipulation, with costs.

All concur.

Ordered accordingly.