## H. L. BURNS v. VICTOR E. ESSLING AND OTHERS.[1]

April 24, 1925.

No. 24,276.

**Councilmen of city of Eveleth not immune from liability for public funds illegally appropriated.**

1. Under the charter of the city of Eveleth, the city council is not a purely legislative body and, when called upon to make restitution of public funds illegally appropriated, its members cannot escape liability by claiming legislative immunity.

**In voting for illegal expenditures councilmen, as matter of law, were not acting in good faith.**

2. Loans of the city's credit and all contributions and donations are expressly prohibited by the charter. In disregard of the prohibition and without seeking the advice of counsel, large sums of money were appropriated to subsidize a baseball and a hockey team, to pay bills for board and lodging for the players, and to pay for lumber used to erect a hockey rink. *Held* that the trial court was justified in holding, as a matter of law, that in voting to expend public money for these purposes the members of the city council did not act in good faith.

[1]Reported in 203 N. W. 605.

Immaterial that citizens petitioned the council for such appropriations.

3. Evidence that the citizens of Eveleth knew the facts and that a number of them petitioned the council to make the appropriations, and that other cities were spending money for the same purposes, was immaterial.

Councilmen absent when money was so voted liable when members of association which received the money.

4. Councilmen, not present when certain appropriations were made, were members of a voluntary association which received the moneys appropriated. They were properly held liable for the repayment of these moneys, as well as moneys which they actually voted to appropriate.

Motive of plaintiff taxpayer in bringing action immaterial.

5. Evidence of the motives by which a city taxpayer was actuated in prosecuting an action to compel restitution of public funds is not material.

Appellants not misled by statement of court.

6. Appellants were not misled to their prejudice by the statement of the court and of respondent's counsel, made in the course of the trial, that evidence of good faith was not material.

1. See Municipal Corporations, 28 Cyc. pp. 316, 470.
2. See Municipal Corporations, 28 Cyc. pp. 470, 1535, 1748 (1926 Anno).
3. See Municipal Corporations, 28 Cyc. p. 1748 (1926 Anno).
4. See Municipal Corporations, 28 Cyc. p. 470.
5. See Actions, 1 C. J. pp. 971, 972, § 66; Municipal Corporations, 28 Cyc. p. 1734.
6. See Appeal and Error, 4 C. J. p. 955, § 2937; p. 957, § 2938.

After the former appeal reported in 154 Minn. 304, 191 N. W. 899, the case was tried before Freeman, J., who ordered judgment in favor of defendant city against the individual defendants for $86,694 and the two surety companies for $4,000 and $2,000 respectively. Defendants other than the city appealed from an order denying their motion for a new trial. Affirmed.

*J. C. McGilvery, Boyle & Montague, John J. Fee* and *George H. Spear,* and *Fryberger, Fulton, Hoshour & Ziesmer,* for appellants.

*Giblin & Manthey,* for respondent.

Lees, C.

A former appeal in this action is reported in 154 Minn. 304, 191 N. W. 899. The case is here now on an appeal from an order denying defendants' motion for a new trial.

The assignments of error question the sufficiency of the findings to support the conclusions of law, the sufficiency of the evidence to support the findings, and certain rulings on the admission of evidence.

The charter of the city of Eveleth provides that the governing body of the city shall be a council composed of the mayor and four councilmen, and grants to the council the power to legislate concerning municipal affairs. The council has control of the city's money, which can be paid out only upon the affirmative vote of three-fifths of the members and by an order signed by the mayor and countersigned by the city clerk. Loans of the city's credit and all contributions or donations not authorized by the charter are prohibited, and the mayor is directed to see to the due enforcement of the provisions of the charter.

The court found that the council made the appropriations and expenditures mentioned in the opinion on the former appeal, that the city received no consideration therefor, and that the money was expended illegally and in fraud of the rights of taxpayers.

Appellants' first point is that, in voting for the appropriations and for the allowance of the bills referred to, the council acted in a legislative capacity and its members incurred no personal liability.

The rule that legislators cannot be called to account for their legislative acts has been applied to village councilmen who in good faith exercise their discretion in voting for a resolution void because of legislative limitations upon their power, Village of Hicksville v. Blakeslee, 103 Oh. St. 508, 22 A. L. R. 119; and to members of a city council who voted to issue bonds in excess of the limit fixed by the state Constitution, Lough v. Estherville, 122 Iowa, 479, 98 N. W. 308. In the latter case doubt was expressed as to whether the rule was applicable where municipal funds were appropriated without form of justification or excuse.

The city council of Eveleth is not a purely legislative body. Claims against the city must be audited and allowed by the council before they can be paid. Bills for lumber, for freight charges and for board furnished to baseball and hockey players were allowed by the council, and the city's money withdrawn from the treasury to pay them. This was not legislative action and appellants should not be allowed to escape liability on the plea of legislative immunity.

In expending the city's money, the power of the council was circumscribed and appellants were bound to look to the charter to ascertain the extent of their authority. Section 74, which forbids the making of contributions or donations, leaves no room for argument. Not only was there a clear lack of authority for the expenditures, but a positive prohibition thereof. The doctrine of the Ohio and Iowa cases cited should not be extended so far as to permit city councilmen to vote public funds away in defiance of the express command of the city charter, without incurring any personal liability for their misconduct. Thus to extend it would expose the city treasury to danger of raids by removing one of the safeguards the law sets about it.

The second point raised is that appellants acted in good faith, and that this is a complete defense. The court found to the contrary, and the first inquiry is whether good faith is a defense, and the second, whether the evidence required a finding in appellants' favor on this point.

The mayor and councilmen D. A. Murray and William Murray each testified that he believed when he voted for the appropriations and for the payment of the bills in question that the city had a right to expend money for games and sports; that there was no consciousness on his part of any wrongdoing; that he did not intend to violate the law; that there was a public demand for baseball and hockey, and that the money was spent to satisfy the demand. Is this a good defense?

In Chippewa Bridge Co. v. Durand, 122 Wis. 85, 89 N. W. 603, 103 Am. St. 931, it was said of municipal officers who entered into a bridge contract in disregard of the provisions of the city charter,

that they had no other motive than to secure a bridge for the city as cheaply as possible and that in that sense they acted in good faith. Nevertheless the court characterized them as lawbreakers, guilty of a wrongful appropriation of the people's money. It was said that officers who knowingly use such money contrary to law, but otherwise to accomplish a legitimate purpose, are guilty in a legal sense of acting in bad faith and of an actionable misappropriation of such money regardless of their good intentions.

Wilcox v. Porth, 154 Wis. 422, 143 N. W. 165, is to the same effect. There the mayor and councilmen audited and allowed an unverified claim against the city. The charter provided that no claim should be allowed unless it was verified. The taxpayers sued the officers to recover the amount which the city had paid to satisfy the claim. The answer pleaded good faith as a defense, but a demurrer to the answer was sustained. See also City of Blair v. Lantry, 21 Neb. 247, 31 N. W. 790.

Analogous cases are those which deal with the directors of private corporations. If such directors do acts clearly beyond the scope of their authority, whereby loss ensues to the corporation, or if they dispose of the property of the corporation or pay away its money without authority, they are personally liable to the corporation. 3 Cook, Corp. § 682. Thus in Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, it was held that the authority conferred by statute on the directors of a corporation is subject to the implied condition that it shall be exercised solely in pursuance of the company's chartered purpose and for the benefit of the stockholders; it does not extend to giving the property of the corporation to others; and this is the rule in this state today. Lake Harriet State Bank v. Venie, 138 Minn. 339, 165 N. W. 225.

The powers of officials who have charge of the money and property of a city resemble the powers of trustees. City officers derive their authority from the city charter; private trustees derive theirs from the instrument defining the trust. A trustee can exercise his power only for the purposes contemplated by the trust. If he transcends the limits placed upon it and causes damage to the estate, he will be held responsible, although he may have acted in perfect

good faith. He is not responsible for mere mistakes or errors of judgment, but is responsible if he deliberately exceeds the authority confided to him, although no bad faith prompted his acts. 28 Am. & Eng. Enc. p. 1063; Hun v. Cary, 82 N. Y. 65, 37 Am. Rep. 546; Vernon v. Board of Police, 47 Miss. 181.

When the validity of a claim is in doubt; or the right to make an appropriation is uncertain; or the language of the charter is ambiguous and their action is taken on the advice of counsel, there is reason for exempting city officials from personal liability. In the present case, in less than two years, nearly $75,000 was taken from the treasury of the city to subsidize a baseball and a hockey team. There is nothing in the charter from which anyone could infer that this was permissible. The mayor is a lawyer, but neither he nor the city attorney advised the council that it had authority to use the city's money for any such purpose; legal advice was neither sought nor given. Upon the showing made, the court was clearly justified in holding that there was constructive bad faith.

Evidence that other cities on the Iron Range were doing the same thing was immaterial, and so was evidence that the people of Eveleth knew the facts and did not object, and that a number of them petitioned the council to make the appropriations in question. Liability must be determined by appellants' acts rather than by their professed intention to obey the law and their apparent belief that they had a right to spend the money as they did.

Citing Bolland v. Gihlstorf, 134 Minn. 41, 158 N. W. 725, it is argued that the rule under which town officers are exempt from liability for their negligent failure to repair roads and bridges should be extended to members of a city council who negligently exceed their authority.

Appellants are not charged with negligence, but with misfeasance in office, to the injury of the city and its taxpayers. Liability for a failure to perform an official duty and liability for an affirmative act of misconduct do not stand on the same footing. See Tholkes v. Decock, 125 Minn. 507, 147 N. W. 648, 52 L. R. A. (N. S.) 142, and Stevens v. North States Motor Inc. 161 Minn. 345, 201 N. W. 435.

This is not a case where a city has received property or services in return for its money; it is one where the money was expended for a prohibited purpose and the city, in its corporate capacity, got nothing in return. Doubtless better exhibitions of baseball and hockey were given than would have been possible if professional players had not been employed, and interest in these sports was aroused and the attention of the young turned away from more questionable forms of entertainment, but the people had to pay for it and for admission to the games as well. In this respect the situation was not the same as expenditures for public parks or playgrounds, or other like expenditures which are generally held to be permissible.

The Wisconsin doctrine, adopted in a few other states, is that under proper circumstances a taxpayer may maintain an action to compel public officers to repay into the public treasury money paid out illegally to third persons. Webster v. Douglas County, 102 Wis. 181, 77 N. W. 885, 75 N. W. 451, 72 Am. St. 870; Osburn v. Stone, 170 Cal. 480, 150 Pac. 367; Russell v. Tate, 52 Ark. 541, 13 S. W. 130, 7 L. R. A. 180, 20 Am. St. 193; Town of Buyck v. Buyck, 112 Minn. 94, 127 N. W. 452, 140 Am. St. 464, pointed to the probable holding of this court and the adoption of the Wisconsin rule when the question now presented was brought before the court, and Bailey v. Strachan, 77 Minn. 526, 80 N. W. 694; Stone v. Bevans, 88 Minn. 127, 92 N. W. 520, 97 Am. St. 506, and Town of Martinsburg v. Butler, 112 Minn. 1, 127 N. W. 420, pointed in the same direction.

We approve of the Wisconsin doctrine and its application to the facts in the case at bar leads to the conclusion that appellants are liable.

The record shows that D. A. Murray and William Murray were not present at some of the meetings of the council at which certain appropriations were made. It appears, however, that the Murrays were both members of the Athletic Association and that D. A. Murray was director of baseball for the association. The association was not incorporated. The money appropriated at meetings not attended by the Murrays was either received by the association or paid out on its account. Under these circumstances, they cannot

escape liability because they did not actually vote for all the appropriations.

The appellants, by cross-examination of the respondent, attempted to show that his motives in prosecuting the action were not disinterested. The court excluded this evidence. The rulings were correct. It is wholly immaterial whether respondent is prosecuting the action to satisfy a grudge or whether he is courageously performing a civic duty. 5 McQuillin, Mun. Corp. § 2584; Chippewa Bridge Co. v. Durand, supra.

Complaint is made because at one stage of the trial the court ruled that evidence of the good faith of the appellants was not material, and at a later stage that appellants might introduce such evidence, and respondent evidence in rebuttal.

Appellants insist that, if they had not been misled by the first ruling, they would have offered more evidence of their good faith, and that the finding that they did not act in good faith might not then have been made.

We think the result could not have been different if all the evidence appellants offered had been received and considered by the trial court, but, this aside, the record shows that in the course of the trial respondent's counsel stated in open court that when they said the question of good faith was not in the case they meant that appellants had not received and kept any of the money appropriated and were not dishonest in that respect. Appellants, therefore, had notice that it would be contended that in a legal sense they were chargeable with bad faith. They had an opportunity before the trial ended to offer any evidence they could produce to meet that issue. In fact they made numerous offers of proof relative thereto, but the offers were rejected. For reasons already stated, this was not error.

Order affirmed.