CITY OF ST. PAUL v. DUAL PARKING METER COMPANY.[1]

July 15, 1949.

No. 34,767.

[1]Reported in 39 N. W. (2d) 174.

218

*Morgan, Chase, Headley & Hoshour, David Raudenbush,* and *Black, McCuskey, Souers & Arbaugh,* for appellant.

*Bruce J. Broady,* Corporation Counsel, and *William M. Serbine,* Assistant Corporation Counsel, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court in favor of plaintiff, hereinafter referred to as the city.

On March 6, 1946, the city council of St. Paul approved specifications for automatic type parking meters to be purchased by and installed for the city. It authorized the city's purchasing agent to advertise for bids for furnishing and installing 1,070 parking meters, subject to the right of the city to increase the number up to 15 percent at the same price. Pursuant to this advertisement, bids for automatic type meters were received from defendant, hereinafter referred to as the contractor, and two other manufacturers. The bid of the contractor for 1,070 meters at $64.50 per meter amounted to $69,015. On May 22, 1946, the purchasing committee of the city awarded the contract to the contractor, and on the same date the award was approved by the city council. On May 28, 1946, before the formal contract was prepared, one Walter A. Coller instituted a taxpayer's suit against the city and the contractor to annul and set aside the award as a violation of the competitive bidding requirements of §§ 299 and 308 of the city's charter. In that action in district court, the contractor obtained a judgment about August 6, 1946, dismissing the action and adjudging that the contract was validly awarded.

On August 20, 1946, the city and the contractor entered into a written contract, pursuant to the award, for 1,070 parking meters at $69,015, which number was increased on December 6, 1946, to 1,230 meters for a total of $79,335, pursuant to the right of the city to increase the number up to 15 percent at the same price.

On August 21, 1946, Coller appealed to this court from the adverse judgment of the district court. After the entry of the judgment in district court in that case and pending the appeal here, the contractor proceeded to furnish to and install for the city 1,230 parking meters, which were placed in operation by the city on December 20, 1946. Subsequently, and on March 21, 1947, this court reversed the judgment of the district court in the Coller case and directed the entry of a new judgment nullifying the award of the

contract to the contractor, and it also granted an injunction enjoining the city and the contractor from entering into and performing the contract made pursuant to the award. During the pendency of the Coller appeal, this court had not been informed that the meters had been installed and were in operation.

The purported contract referred to herein contained in part the following provisions:

"B. Trial Period: The City shall have six months of meter operation after all meters are installed and in operation to determine the satisfactory performance of the meter installed; and in the event the City is restrained by court action from operating meters during this six-month period or a part thereof, the Council, by resolution, may extend said six-months period at its option, so as to insure a full six-months operation of said meters, said six months or any extension thereof to be known in these specifications as the 'trial period.'

"In the event that the meters installed under this contract do not satisfactorily perform their function at any time during the trial period, the City Council may, by resolution, cancel the contract and reject the meters. In the event of such rejection, the City Clerk shall notify the contractor by mailing to said contractor a certified copy of the resolution duly adopted by the Council of the City of St. Paul, rejecting said meters and ordering their removal from the streets of the City of St. Paul. In case said meters are thus rejected, the same are to be removed entirely from the streets or other public ways where placed, and the streets or sidewalks restored to their normal condition within thirty (30) days after the said notice is received by the contractor, without any cost or expense to the City.

\* \* \* \* \*

"D. Schedule of Payments: Payments under this contract shall be made to the contractor as follows: At the end of each thirty days during the six-months trial period a sum shall be due and payable to the contractor equal in amount to sixty (60%) per cent of the receipts from the parking meters during the preceding thirty

(30) day period, but not in any case in excess of the total contract price. After the expiration of the six-months trial period, a sum shall be due and payable to the contractor, equal in amount to sixty (60%) per cent of the receipts from the parking meters during each thirty-day period until the full amount of the contract price is paid.

"No obligation of any kind or nature whatsoever shall accrue against the City to either accept such meters or pay for the same or any part thereof except to pay sixty (60%) per cent of the receipts during the 'trial period' or any extension thereof, and if the meters are accepted, sixty (60%) per cent of the receipts after the 'trial period,' until the full amount of the contract price has been paid.

"In the event the City shall be prevented from installing and/or operating such meters by final court judgment or decree then the City may reject the same without liability or obligation except as provided above."

The receipts for the month of December 1946 from the meters installed amounted to $6,615.68, of which amount the contractor received 60 percent, or $3,969.41, in accordance with the schedule of payments provided for in the contract. This payment was made by the city to the contractor on or about January 10, 1947. The receipts for January 1947 were $10,281.89, of which amount 60 percent, or $6,169.13, was paid the contractor by the city on or about February 10, 1947. The receipts for February 1947 amounted to $9,696.81, of which 60 percent, or $5,818.09, was paid to the contractor by the city on or about March 10, 1947. The total amount paid to the contractor by the city, representing 60 percent of the receipts from the meters from December 20, 1946, through February 1947, was $15,956.63, and the total amount retained by the city, representing 40 percent of the meter receipts during the same time, was $10,637.75.

After the filing of this court's opinion in the Coller case on March 21, 1947 (Coller v. City of St. Paul, 223 Minn. 376, 26 N. W. [2d] 835), the city held up and has continued to hold up all payments

claimed by the contractor as accruing to it under the provisions of the contract. The receipts from the meters, according to the record, for the month of March 1947 amounted to $11,418.28, of which 60 percent would be $6,850.97. The receipts from April 1, 1947, to April 27, 1947, inclusive, amounted to $10,629.80, of which 60 percent would be $6,377.88.

After the decision of this court in the Coller case was filed and early in April 1947, the city readvertised for bids covering 1,230 new or used automatic type or manual type parking meters. Otherwise, the specifications were the same as before, except that quotations were asked only on meter heads and posts, the city undertaking to do its own installing. The contractor submitted a bid for used automatic type meter heads and posts at a unit price of $40.34. A written contract, based on the award, was signed by the parties on April 28, 1947, and on the same date a separate contract was signed by the city and the contractor whereby the latter transferred to the former title to the base installations in the sidewalks, and the city relieved the contractor of its obligation to remove the same and restore the sidewalks. The city also agreed to save the contractor harmless from any claims by reason of the presence of such base installations in the sidewalks.

On June 24, 1947, the city brought this action in district court under the declaratory judgments act (M. S. A. c. 555) praying for a judgment declaring the rights of the city and the contractor in and to all receipts from the 1,230 parking meters furnished by the contractor to the city and for such other relief as the court might deem proper. It is from the judgment of the district court awarding the city all the money put into the parking meters between December 20, 1946, and April 27, 1947, together with costs and disbursements, and denying the contractor any compensation for the use of the meters by the city that this appeal is taken.

The legal issues raised by the contractor on appeal and adopted by the city are as follows:

(1)   Did the contract of August 20, 1946, between the parties contain severable rental provisions, not within the competitive bidding requirements of the city's charter, which survived the decision of this court, invalidating the award as a transaction of purchase and sale?

(2)   In the alternative, was the contractor entitled to compensation in quasi contract to the extent of the benefits received by the city from its use of the meters between December 20, 1946, and April 27, 1947, and, if so, what was the amount or measure of the benefits?

■   A review of our decision in the Coller case shows clearly that we directed a judgment to be entered nullifying the award of the contract to the contractor and granting an injunction enjoining the city and the contractor from entering into and performing a contract pursuant to the award. We thus considered as illegal the entire purported contract entered into between the city and the contractor on August 20, 1946, pursuant to the award. That being the case, we cannot now consider the first issue raised by the contractor on this appeal as to whether the purported contract of August 20, 1946, contained severable rental provisions which might have survived the decision of this court invalidating the award as a transaction of purchase and sale only.

■   This brings us to the other issue raised on this appeal, and that is whether the contractor is entitled to compensation in quasi contract to the extent of the benefits received by the city from its use of the meters between December 20, 1946, and April 27, 1947, and, if so, the amount or measure of the benefits.

We have had a line of decisions in this court which have permitted a contractor to recover in quasi contract for benefits received by a municipality where the contract was made in good faith and was within the power of the municipality to make but where it was declared void because of noncompliance with details required by statute or charter, or failure to comply with competitive bidding requirements, or for some other failure to comply with legal re-

quirements. See, First Nat. Bank v. Village of Goodhue, 120 Minn. 362, 139 N. W. 599, 43 L.R.A.(N.S.) 84; Wakely v. County of St. Louis, 184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920; Laird Norton Yards v. City of Rochester, 117 Minn. 114, 134 N. W. 644, 41 L.R.A.(N.S.) 473; Fargo Foundry Co. v. Village of Callaway, 148 Minn. 273, 181 N. W. 584; Mares v. Janutka, 196 Minn. 87, 264 N. W. 222.

In Village of Pillager v. Hewett, 98 Minn. 265, 107 N. W. 815, plaintiff village entered into a contract with defendant contractor for the construction of a bridge. The contract was within the power of the village to make, but was not entered into in the manner and form required by statute, since it was entered into privately, not upon and after advertisement for bids. The contractor built the bridge according to plans and specifications. The village inspected and accepted the same and paid the contractor $500 in cash and $1,300 in bonds as part of the contract price, but it refused to pay the balance on the ground that the contract was void. It was held void by reason of its failure to comply with the details required by statute. The bridge was afterward carried away by a flood, which the court said was not material, since it was not due to any fault of the contractor. The village brought an action to recover the amount paid on the contract price. The court there said that it may be conceded that the contractor could not maintain an action on the contract to recover the contract price (98 Minn. 267, 107 N. W. 816)—

"for upon the grounds of sound public policy the doctrine of ultra vires is applied with greater strictness to municipal than to private corporations. * * * it would be most inequitable and unconscionable to compel the defendant to return the money and bonds paid to him under the circumstances found by the trial court, and we hold that the plaintiff cannot maintain this action to recover them."

In that case, the court stressed the fact that the contract was entered into in good faith and that the price to be paid for the bridge was fair and reasonable. No action had been commenced to enjoin

the performance of the contract, as here, but only an action by the village to recover from the contractor a partial payment made on a contract declared void after the bridge had been constructed by the contractor and accepted by the village.

It will be noted that in all those cases where recovery was permitted in quasi contract the primary requisite appears to have been that in order to permit recovery the contract must have been entered into in good faith and without intent to violate the law. It will be noted also that in none of the cases had an action been commenced to enjoin the contractor from performing the contract, as here. In contrast, we find in the Coller case, 223 Minn. 376, 26 N. W. (2d) 835, that this court concluded that the contractor's bid was a proposal to install the meters according to its own specifications as a substitute for the method required by the city; that the contractor excepted therefrom requirements of furnishing and compensating a serviceman to service the meters during the trial period; that the bid was amended and modified after the bids had been received and opened. Inasmuch as the meters had been installed by the contractor pending an appeal to this court in said action to nullify the award of the contract to the contractor and to enjoin the city and the contractor from entering into and performing a contract pursuant to the award, it is our opinion that the elements of good faith that were present in the cases permitting recovery by the contractor are lacking here. We hold that under the facts and circumstances the contractor is not entitled to compensation in quasi contract to the extent of the benefits received by the city during the times involved in this action.

In the Coller case, the contractor and the city were both defendants and were both in the same situation with reference to the relief granted to plaintiff in his taxpayer's suit. In this case, the contractor and the city are on opposite sides, each seeking a judgment declaring its rights in and to the receipts from the meters from December 20, 1946, to April 27, 1947, which meters were installed and put into operation *after* the appeal was taken in the Coller case and before the final decision.

This appeal by the contractor is from the judgment of the district court awarding to the city all the receipts for the time involved. Thus, we have this incongruous situation: When our decision came down in the Coller case, the same meters which we attempted to restrain the parties from installing and putting into operation, by enjoining them from entering into and performing the contract pursuant to the award, had already been installed and put into operation.

It appears to us that when the parties entered into and performed the contract pending the appeal in the Coller action to enjoin them from doing so neither the contractor nor the city acquired any rights under the contract or by reason of its performance. As it develops from the decision in the Coller case, the city could not legally let the contract, nor could the contractor legally perform it. Our decision in that case determined that as between the contractor and the city the contract and the performance thereof were illegal, as we enjoined the parties from entering into the contract or performing it.

It would be unreasonable to say here that one of the parties should be entitled to equitable relief and the other denied it. It appears to us that both are in substantially the same position so far as the situations are concerned out of which this litigation and the Coller case arose. It might be argued by both parties that, inasmuch as the contractor obtained a judgment in district court dismissing the action and adjudging the contract validly awarded, the parties were justified in entering into the contract of August 20, 1946. With this position we shall not disagree. However, when Coller appealed to this court on August 21, 1946, both the city and the contractor, who were defendants in that action, took their own chances that the district court judgment might be reversed, that the award might be nullified, and that they might be restrained from entering into and performing the contract, which is exactly what happened. It would appear that under those circumstances it was inequitable conduct on the part of both parties to proceed with or attempt to permit the performance of the contract by in-

stalling the meters prior to the time the Coller appeal was deter-mined by this court.

In Jones v. Securities & Exchange Comm. 298 U. S. 1, 15, 56 S. Ct. 654, 657, 80 L. ed. 1015, 1021, the court said:

"* * * The rule is well settled, both by the courts of England and of this country, that where a suit is brought to enjoin certain acts or activities, for example, the erection of a building or other structure, of which suit the defendant has notice, the hands of the defendant are effectually tied pending a hearing and determination, even though no restraining order or preliminary injunction be issued."

In Fredericks v. Huber, 180 Pa. 572, 575, 37 A. 90, 91, the court said:

"* * * Equity regards the substance rather than the form of things, and will not allow itself to be baffled by a wrongful change while its aid is being invoked."

In Kreusler v. McKees Rocks School Dist. 256 Pa. 281, 100 A. 821, the plaintiff, a contractor, brought an action to recover in *quantum meruit* for work done and materials furnished defendant, a school district, under an *ultra vires* contract. The plaintiff also endeavored to recover the amount due under a legal contract for certain re-pairs. The court held that the trial court properly had refused to permit the defendant to set off against the amount due under the valid contract sums which had been previously paid plaintiff under the void contract. The court there said (256 Pa. 294, 100 A. 824):

"* * * The learned court below refused to allow the set-off on the ground that, as it was paid on an illegal contract, the law leaves 'the parties just in the condition in which it finds them.' This is the general rule to which the present case is not an ex-ception. The contract for the construction of the superstructure was ultra vires the school board, and, therefore, incapable of en-forcement. Hence, the plaintiff is not permitted to invoke its aid in collecting the amount due him for work done * * *. For a like

reason, the contract will not support an action by the defendant school district to recover back the money which it paid illegally to the plaintiff for work done under the contract. * * * The plaintiff having notice of the wrongful act is in pari delicto with the school board. Neither is the victim of the other. * * * The law, under such circumstances, will not give relief directly or indirectly to either party."

The contractor here argues that if it had not proceeded promptly it would have suffered a forfeiture of its certified check, required of each bidder to secure prompt execution and performance. This position is hardly tenable, for even though the deposit had been forfeited the city would have been compelled to refund it as a result of the decision in the Coller case.

It is our opinion that both parties are in such an inequitable position as to the proceeds from the meters between December 20, 1946, and April 27, 1947, that we must leave them where the law found them when this action was commenced. Technically speaking, these funds were not received exclusively from the residents of the city of St. Paul as a tax levy, but were received from the public generally for parking privileges.

Reversed with directions that the judgment of the trial court be modified so as to leave the parties with reference to the distribution of the receipts from the parking meters between December 20, 1946, and April 27, 1947, in the position they were at the time this action was commenced.

Reversed.

PETERSON, JUSTICE (dissenting in part).

1. I agree that a contractor is not entitled to retain money paid to him for performance of a contract let to him illegally in violation of charter provision requiring that bids be advertised for and that the contract be let to the lowest bidder, where the contractor did not act in "good faith." But I think, for the reasons stated in my dissent in Kotschevar v. Township of North Fork, 229 Minn. 234, 39 N. W. (2d) 107, that the contractor is not entitled to recover

at all in such cases, regardless of whether he acted in "good faith."

2. In addition, I dissent upon the further and separate ground that the doctrine that a plaintiff *in pari delicto* with the defendant cannot recover has no application where, prior to illegal payment, the court has acquired jurisdiction of the parties in an action for an injunction to restrain the payment and where a city sues as plaintiff to recover money paid by it illegally both in violation of law and of the judgment for the injunction.

Here, the receipts from the parking meters were turned into the city treasury, and afterward a part of them was paid to Dual. Our decision in the Coller case determined that the contract for the purchase and installation of the parking meters was illegal and enjoined performance thereof. The decision here of the majority reaffirms that Dual could not recover upon the illegal contract, and holds that, if the contract were still executory, it would not be entitled to recover in quasi contract for lack of good faith. But it holds also that the city cannot recover from Dual what it has illegally paid pending the injunction proceedings. While there are cases sustaining such a view, I think that the better rule is the one, which we have approved, that in such cases a city is entitled to recover such payments.

(a) Decision that the contractor did not act in "good faith" in effect determines that he is not entitled to retain the money paid at all. It is a case of payment of public money without any authority for so doing. It is settled law that such payments may be recovered. Burns v. Essling, 154 Minn. 304, 191 N. W. 899; *Id.* 163 Minn. 57, 203 N. W. 605.

In Village of Fort Edward v. Fish, 156 N. Y. 363, 50 N. E. 973, the court held, in a case by a village to recover money illegally paid, that there was no authority for such payment and that consequently the village was not *in pari delicto* with the payee. The court said (156 N. Y. 374, 375, 50 N. E. 975, 976):

"* * * That doctrine applies to individuals who have power to do as they wish with their own, but it does not apply to an agent

of a municipal corporation, who pays out its money without power, to one who accepts it with knowledge. The statute forbade the payment from the funds of the water board, and action forbidden by statute is void. A void act is no act, and a void payment is no payment. Such a payment is not voluntarily made by the corporation, but by its agent, in excess of his authority and in defiance of its rights. It is not the act of the corporation itself, but of one, without authority, who assumed to act for it. * * * *The parties were not in pari delicto, because the plaintiff did not really make the payment, but its funds were used for that purpose without its authority.*" (Italics supplied in part.)

And in City of Bangor v. Ridley, 117 Me. 297, 300, 104 A. 230, 231, the court pointed out that the doctrine of denial of right of recovery to a party *in pari delicto* with the defendant has no application in a case where a municipality is the plaintiff, saying:

"But it may be said the city government has voluntarily paid him for his services, and as such payment was equitable, they cannot recover it back in the equitable action of money had and received. This reasoning might hold good in cases between individuals, but a municipality is a creature of the statute and can do just what the statute, and the necessary execution of the statute, permits, and cannot do what the statute inhibits. It will require no citations to show that the officers of a municipal government cannot contract to pay, expend or pay out, city funds for an illegal purpose or upon an illegal contract. It is not within the scope of their powers, and if paid the city in the proper form of action can recover it back. Otherwise municipalities might be mulcted to the verge of ruin by dishonest or incompetent officials, if having illegally paid the money out the city cannot recover it back.

"A party dealing with a municipality can reap no advantage from the fact that his illegal conduct is completed, as it is incumbent upon everyone, dealing with a municipality, to discover its authority to act, or to assume the risk upon failure so to do, and deal with it at his peril."

Other cases are in accord: Miller v. McKinnon, 20 Cal. (2d) 83, 124 P. (2d) 34, 140 A. L. R. 570; Miller v. City of Martinez, 28 Cal. App. (2d) 364, 82 P. (2d) 519; Chicago Park Dist. v. R. E. Herczel & Co. 298 Ill. App. 215, 18 N. E. (2d) 744; McNay v. Town of Lowell, 41 Ind. App. 627, 638, 84 N. E. 778, 782; see, City of Kiel v. Frank Shoe Mfg. Co. 245 Wis. 292, 14 N. W. (2d) 164, 152 A. L. R. 691.

(b) Where injunction proceedings to enjoin performance of an illegal contract have been commenced and the defendant, pending the proceedings, performs the act sought to be enjoined, the court, as part of its power to order restoration of the *status quo,* will order the undoing of such act. Jones v. Securities & Exchange Comm. 298 U. S. 1, 56 S. Ct. 654, 80 L. ed. 1015; Porter v. Lee, 328 U. S. 246, 66 S. Ct. 1096, 90 L. ed. 1199; Porter v. Warner Holding Co. 328 U. S. 395, 66 S. Ct. 1086, 90 L. ed. 1332; Texas & New Orleans R. Co. v. Northside Belt Ry. Co. 276 U. S. 475, 48 S. Ct. 361, 72 L. ed. 661; Werner v. Norden, 87 Colo. 339, 287 P. 644; Anderson v. W. G. Rawley Co. Ltd. 27 Hawaii 150; Turney v. Shriver, 269 Ill. 164, 109 N. E. 708; New Haven Clock Co. v. Kochersperger, 175 Ill. 383, 51 N. E. 629; Wise v. Chandler, 270 Ky. 1, 108 S. W. (2d) 1024; Woodbridge Tp. v. Middlesex Water Co. (N. J. Ch.) 68 A. 464; Tucker v. Howard, 128 Mass. 361; State ex rel. Tharel v. Board of Co. Commrs. 188 Okl. 184, 107 P. (2d) 542; 28 Am. Jur., Injunctions, § 6; see, Palmetto F. Ins. Co. v. Conn (D. C.) 9 F. (2d) 202; Love v. A. T. & S. F. Ry. Co. (8 Cir.) 185 F. 321, affirming 174 F. 59 (certiorari denied, 220 U. S. 618, 31 S. Ct. 721, 55 L. ed. 612).

In Chippewa Bridge Co. v. City of Durand, 122 Wis. 85, 106, 99 N. W. 603, 610, 106 A. S. R. 931, where in a case like this the action was against the city officials and the contractors, the court said:

"In support of the judgment counsel for respondents rely in a measure upon the finding that prior to the trial of the action the defendants composing the Business Men's League had completed their contract and received the agreed amount for their work, and that the American Bridge Company had incurred considerable ex-

pense in the performance of its contract. We do not perceive how what was done by the parties after the commencement of the action, whereby they will suffer loss if appellant succeeds, should have any weight in the matter. Certainly, they took their chances, in proceeding after being admonished by the commencement of the suit that the validity of their contracts would be judicially investigated. Sometimes laches on the part of a taxpayer in commencing an action of this sort materially affects the quantum or character of the relief which equity will afford him, as was the case in Frederick v. Douglas Co., 96 Wis. 411, 71 N. W. 798, *supra; but the action having been seasonably commenced for all purposes, the defendants cannot, as a rule, reasonably expect to obtain any great or lasting advantage by accomplishing in the interim between such commencement and the final adjudication of the rights of the parties the thing sought to be prevented. They may proceed, there being no provisional remedy to prevent it, so as to preclude preventive relief of an effective character at the close of the litigation, laying themselves liable, however, to restore the public money obtained by them, and to recoup their loss, so far as practicable, by such lawful means as may be open to them.*" (Italics supplied.)

In Burns v. Essling, 163 Minn. 57, 60, 203 N. W. 605, 606, we approved the rule of the Chippewa Bridge Co. case, *supra,* saying:

"In Chippewa Bridge Co. v. [City of] Durand, * * * it was said of municipal officers who entered into a bridge contract in disregard of the provisions of the city charter, that they had no other motive than to secure a bridge for the city as cheaply as possible and that in that sense they acted in good faith. *Nevertheless the court characterized them as lawbreakers, guilty of a wrongful appropriation of the people's money. It was said that officers who knowingly use such money contrary to law, but otherwise to accomplish a legitimate purpose, are guilty in a legal sense of acting in bad faith and of an actionable misappropriation of such money regardless of their good intentions.*" (Italics supplied.)

That is sound law and common sense, to which I think we should adhere. The majority decision departs therefrom upon the authority of a case opposed to the rule which we have thus approved.

Recovery here from Dual of money paid to it by the city is part of the restoration of the *status quo*. Any other view would sanction contumacious disregard of the injunction proceedings.

For the reasons stated, I think that we should affirm.

LORING, CHIEF JUSTICE (dissenting).

In view of the bad faith resulting from defendant's proceeding in the face of the injunction suit, I do not think that the doctrine of *in pari delicto* applies. I think we should affirm.

KNUTSON, JUSTICE (dissenting).

I agree with the dissent of Mr. Chief Justice Loring. Defendant gambled on the outcome of the appeal in the former action and lost. The result of the majority opinion is to place defendant in the same position as if the original contract had been valid. I do not agree that the issues are the same as in Kotschevar v. Township of North Fork, 229 Minn. 234, 39 N. W. (2d) 107. Here, defendant did not act in good faith.