ATCHISON, T. & S. F. RY. CO. v. LOVE et al. GULF, C. & S. F. RY. CO. v. SAME. MISSOURI, K. & T. RY. CO. v. SAME.

(Circuit Court, W. D. Oklahoma. November 13, 1909.)

1. COURTS (§ 508*)—JURISDICTION OF FEDERAL COURTS—SUIT TO ENJOIN ORDER OF STATE COMMISSION FIXING RAILROAD RATES.

A railroad company, which has appealed from an order of the Corporation Commission of Oklahoma fixing freight rates to the Supreme Court of the state, as permitted by the state Constitution, but was denied leave to give bond to suspend the operation of the order pending the appeal, thus leaving the order of the commission in force, may invoke the jurisdiction of a federal court to enjoin the enforcement of such order, where it is alleged that the rates fixed thereby are confiscatory and in violation of the Constitution of the United States.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418-1428; Dec. Dig. § 508.*]

2. COURTS (§ 508*)—JURISDICTION OF FEDERAL COURTS—REMEDY GIVEN BY STATE CONSTITUTION.

The Constitution of Oklahoma fixes the maximum passenger rates which may be charged by any railroad for transportation between points in the state at two cents per mile, but provides that the Corporation Commission shall have power to exempt any company from such rate on satisfactory proof that it is not compensatory. Held, that such remedy is not exclusive, and does not deprive a railroad company of the right to invoke the jurisdiction of the federal courts, where proper grounds for such jurisdiction are alleged, without first applying to the commission for relief.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418-1428; Dec. Dig. § 508.*]

In Equity. Suits by the Atchison, Topeka & Santa Fé Railway Company, by the Gulf, Colorado & Santa Fé Railway Company, and by the Missouri, Kansas & Texas Railway Company against J. E. Love, James J. McAlester, and A. P. Watson, members of the Corpo-

ration Commission of Oklahoma, Charles West, Attorney General of Oklahoma, and others. On pleas by defendants. Pleas overruled:

Frank Hagerman and Cottingham & Bledsoe (Gardiner Lathrop, Robert Dunlap, and T. J. Norton, of counsel), for complainants Atchison, T. & S. F. Ry. Co. and Gulf, C. & S. F. Ry. Co.

Clifford L. Jackson, C. G. Horner, and Frank Hagerman (James Hagerman and Joseph M. Bryson, of counsel), for complainant Missouri, K. & T. Ry. Co.

Charles West, Atty. Gen., and George A. Henshaw, Asst. Atty. Gen., for defendants.

HOOK, Circuit Judge. These are suits by railroad companies doing business in the state of Oklahoma to enjoin the enforcement of certain freight and passenger rates, upon the ground, among others, that after the test of experience they have proved to be so unreasonably low as to amount to a confiscation of their property, contrary to the fourteenth amendment to the Constitution of the United States. The defendants are the members of the Corporation Commission, the Attorney General of the state, and certain citizens who are alleged to be representative shippers and passengers. The freight rates in question were prescribed by orders of the commission; the passenger rate, two cents per mile, by the state Constitution. The complainants have applied for temporary injunctions. The question now before the court is presented by defendants, and it is whether this court should not suspend further proceedings in the cases, so far as the freight rates are concerned, until their validity is determined by the Supreme Court of Oklahoma, and, as regards the passenger rate, until complainants have sought relief from the commission.

The Constitution of Oklahoma confers upon the Corporation Commission the power to regulate, supervise, and control the rates and charges of transportation companies, to prescribe and enforce such rates and charges, and from time to time to alter and amend them. In such matters it is also given the power and authority of a court of record to administer oaths, require the attendance of witnesses, etc., and to compel compliance with its lawful orders by adjudging and enforcing, upon notice and opportunity to be heard, such fines or other penalties as may be prescribed or authorized by the Constitution or by law. In a proceeding to enforce a penalty for disobedience, the validity or reasonableness of the order of the commission may be drawn in question. The commission may impose a fine not exceeding $500 for each day's default, or such sum in excess thereof as may be authorized by law; but, should the operation of the order be suspended pending an appeal therefrom, the period of suspension is not to be computed in imposing fines. The Constitution also provides for an appeal to the Supreme Court of the state from an order of the commission prescribing rates and charges, or refusing to approve a suspending bond. The appeal is a matter of right, and no other court of the state has jurisdiction to review the orders of the commission made within the scope of its authority. The appeal is heard in the Supreme Court of the state upon the record made before the com-

mission, no additional evidence being received; but the court may remand the case to the commission for further investigation pending the appeal. No reversal by the Supreme Court is valid, unless it substitutes for the order of the commission such order as in its opinion the commission should have made. The substituted order of the court has the same force and effect, and none other, as if it had been entered by the commission at the time the original order appealed from was entered.

It is apparent these provisions were substantially copied from those of the Constitution of the state of Virginia, which were considered, and their character and effect upon suits in the courts of the United States determined, in Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150. Indeed, that case is relied upon by defendants as authority for the suspension of further proceedings in the present suits. There the State Corporation Commission of Virginia, after a thorough hearing, promulgated an order fixing two cents per mile as a maximum passenger rate. The railroad companies neither obeyed the order nor appealed from it to the Supreme Court of Appeals of Virginia, as the Constitution permitted, but at once brought suits in the Circuit Court of the United States to enjoin the commission from enforcing its order. Restraining orders were granted. On appeals to the Supreme Court of the United States it was held that the proceedings for fixing rates and charges whether in the commission or in the state Court of Appeals on appeal were legislative in character, although the principal aspect of those tribunals may be judicial; and it was said in substance, but in carefully measured terms, that the legislative process fixing the rates complained of was not so complete as to give an absolute, unqualified right to resort to the courts, and that considerations of comity and equitable fitness or propriety would be best subserved by an appeal by the railroad companies from the legislative order of the commission to the state Court of Appeals. There was a question whether the time for such appeals had not expired, and regarding it the Supreme Court said:

"As our decision does not go upon a denial of power to entertain the bills at the present stage, but upon our views as to what is the most proper and orderly course in cases of this sort, when practicable, it seems to us that the bills should be retained for the present to await the result of the appeals, if the companies see fit to take them. If the appeals are dismissed, as brought too late, the companies will be entitled to decrees. If they are entertained, and the orders of the commission affirmed, the bills may be dismissed without prejudice, and filed again."

In Willcox v. Consolidated Gas Co., 212 U. S. 19, 40, 29 Sup. Ct. 193, 195, 53 L. Ed. 382, the result in the Virginia cases is thus summarized:

"It is true an application for an injunction was denied in that case because the plaintiff should, in our opinion, have taken the appeal allowed him by the law of Virginia while the rate of fare in litigation was still at the legislative stage, so as to make it absolutely certain that the officials of the state would try to establish and enforce an unconstitutional rule."

There, are, however, marked differences between the Virginia cases and those at bar. In fact, the inferences from the opinion of the

Supreme Court would seem to require this court to proceed with the exercise of its jurisdiction. After the orders of the Oklahoma commission became effective, they were obeyed by the railroad companies until, as they claim, it was demonstrated the rates prescribed were confiscatory. Whether they are right in this, or whether the test was a fair one, of course, is not now determined. Reference is merely made to the averments in the bills. If the effect of the rates upon the property and business of a company is doubtful, an experimental observance of the order prescribing them is a commendable course (Knoxville v. Water Co., 212 U. S. 1, 29 Sup. Ct. 148, 53 L. Ed. 371; Willcox v. Consolidated Gas Co., supra); and by its adoption the company should neither lose any of its rights nor be embarrassed in the assertion of them, except so far as the results of a practical application of the rates may afford proof against its contentions. The complainants applied to the commission to certify to the Supreme Court of Oklahoma for review the records relating to the various rate orders, and to fix the terms and amounts of supersedeas bonds to be executed by them. The commission declined to do so. They then applied to the Supreme Court, which awarded writs of mandamus requiring the sending up of the records. The commission still declining to allow a suspension of the orders pending the appeals, complainants applied to the Supreme Court for that purpose, but their request was denied.

The result is that, though appeals have been taken and are pending, the various orders complained of are still in force, and complainants must either obey them or take the chance of the penalties for disobedience. Even if the rates complained of may be said to be still in process of formation, yet, if they are confiscatory, as alleged, an injury to complainants is being inflicted as fully and irreparably as though by a completed legislative act or order. It is none the less violative of their rights under the Constitution that the injury arises from an enforced compliance with a tentative or uncompleted rule. The doctrine of the Virginia cases rests on considerations of orderly procedure in equity and a due regard for the governmental departments of the states; but it did not appear in that case, as here, that the rates first promulgated were being enforced, and that the railroad companies could not obtain a suspension of them pending the appeals which the court said should have been taken. The difference between the cases is a vital one.

After the appeals were lodged in the Supreme Court of Oklahoma, motions were interposed on behalf of the state to dismiss them, on the ground that the records were incomplete and the fault was that of the railroad companies. The motions were denied. It is now urged that the applications for supersedeas should have been renewed after the denial of the motions to dismiss. But there was no such dependence or connection between the two proceedings as renders that course necessary. The applications to the commission and to the court for leave to give bonds suspending the operation of the orders were properly and seasonably made. It does not appear they were denied because premature, and there is nothing to show another effort would have been successful.

The matter of the passenger rate stands upon a somewhat different footing. The Constitution of Oklahoma provides:

"No person, company or corporation, receiver, or other agency, operating a railroad, other than street railroad or electric railroad, in whole or in part, within this state, shall demand or receive for first class transportation for each passenger, between points within this state on the portion of its road operated within this state, more than two cents per mile, until otherwise provided by law: Provided, however, the Corporation Commission shall have the power to exempt any railroad from the operation of this section upon satisfactory proof that it cannot earn a just compensation for the services rendered by it to the public, if not permitted to charge more than two cents per mile for the transportation of passengers within the state." Article 9, § 37.

Complainants did not invoke the jurisdiction of the commission, as authorized by the above proviso, but brought these suits after some experience with the rate prescribed. It cannot be assumed the commission would have failed to give them relief if they were entitled to it; but the questions now before the court are whether they should have first gone there before bringing these suits, or were absolutely required to seek their remedy in the commission and the Supreme Court of the state as tribunals of exclusive jurisdiction. The doctrine of the Virginia cases does not apply, because the prescription of the passenger rate had passed the legislative stage, and had become a completed rule of action. As regards the question here, the constitutional provision is not different from an act of the Legislature definitely fixing rates and committing to some particular state tribunal jurisdiction to determine their reasonableness, and if found unreasonable then legislative power to substitute other rates in their stead. The situation presented is that of a case calling for judicial inquiry and determination, and the second question is whether they may be had in this court, or must be had in the state tribunals. Upon that, the following principles, believed to be firmly imbedded in the jurisprudence of this country, are decisive: When the jurisdiction of a court of the United States is invoked upon sufficient grounds, it cannot be relieved of its duty to take cognizance and proceed, either by constitutional provision or by legislative act of a state. If, according to recognized principles of jurisprudence, the case is in its essential features a civil action at law or in equity, it matters not that the state may have denied the complaining party access to its courts, or may have designated some particular local tribunal, to the exclusion of all others, state and national. The test is the existence of a controversy and its character, and the presence of grounds of federal jurisdiction, not whether the courts of the state are open, or to what extent. The exercise of jurisdiction so invoked is the right of the litigant under the supreme law of the land. It is a duty of the court which may not be avoided. Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. 440, 36 L. Ed. 130; Willcox v. Consolidated Gas Co., 212 U. S. 19, 40, 29 Sup. Ct. 192, 53 L. Ed. 382; Spencer v. Watkins (C. C. A.) 169 Fed. 379.

The pleas of defendants should be overruled.