Chicago Park District, Successor to Northwest Park District, Appellee, v. R. E. Herczel and Company et al., Appellants.

Gen. No. 40,177.

Opinion filed January 11, 1938. Rehearing denied February 6, 1939.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant Glens Falls Indemnity Co.; RALPH F. POTTER and GEORGE C. BUNGE, of Chicago, of counsel.

LUCIUS, BUEHLER & LUCIUS, of Chicago, for co-appellant R. E. Herczel & Co.; ALBERT E. LUCIUS, of counsel.

UNGARO & SHERWOOD, of Chicago, for co-appellant Francis X. Milano; LYMAN W. SHERWOOD, of counsel.

SPITZ, McKENNA & ELMES, of Chicago, for co-appellant Eden T. Brekke; IGNATZ SPITZ, of counsel.

FRANK PESKA, of Chicago, for co-appellant Joseph F. Gubbins.

JOHN O. REES, of Chicago, for appellee; MARTIN G. LOEFF and HARRY P. HENSEL, both of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This was an action at law, heard by the court sitting without a jury, in which the court found the issues in favor of the plaintiff, the Chicago Park District, a municipal corporation, as successor to the Northwest Park District, a municipal corporation, and against the defendants R. E. Herczel & Co., Joseph F. Gubbins, Eden T. Brekke, and Francis X. Milano, assessing plaintiff's damages at $71,000, and also found the issues in favor of the plaintiff and against the defendant Glens Falls Indemnity Company, a corporation, upon the bond of Eden T. Brekke, as secretary and superintendent of said Northwest Park District, assessing plaintiff's damages at $10,000, and upon the bond of Francis X. Milano, as treasurer of said district, assessing plaintiff's damages at $20,000. Judgment was entered on February 4, 1938, upon the findings of the

court in favor of the plaintiff and against the defendants R. E. Herczel & Co., Joseph F. Gubbins, Eden T. Brekke, and Francis X. Milano for $71,000, and against the defendant Glens Falls Indemnity Company for $10,000 upon the bond of Eden T. Brekke, and for $20,000 upon the bond of Francis X. Milano.

The original complaint filed on August 11, 1934, in the name of Northwest Park District, plaintiff, against R. E. Herczel & Co., Francis X. Milano, and Glens Falls Indemnity Company, was superseded on October 24, 1935, by an amended complaint filed by Chicago Park District, as successor to said Northwest Park District, plaintiff against the same defendants. This amended complaint charges, in substance, that on August 18, 1931, the Northwest Park District and Francis X. Milano, its treasurer paid $50,000 of the moneys of the District to R. E. Herczel & Co., supposedly in payment of the interest due on August 1, 1931, on a $2,000,000 park bond issue, of which only $600,000 of bonds had actually been purchased and paid for by R. E. Herczel & Co.; that on the same date, the Northwest Park District and Francis X. Milano, its treasurer, paid the further sum of $21,000 to said R. E. Herczel & Co. for its alleged expenses in connection with the sale of the bonds to R. E. Herczel & Co.; that such payments were wrongful, illegal and contrary to law; that the defendant R. E. Herczel & Co. wrongfully accepted and retained the moneys, and was liable to return the same; and that the defendant Francis X. Milano, and the defendant Glens Falls Indemnity Company, as surety on his official bond as treasurer of the district in the penal sum of $20,000, were also liable to the plaintiff therefor.

On June 29, 1936, the plaintiff filed eight additional counts, directed against the above named and two additional defendants, Joseph F. Gubbins and Eden T. Brekke, formerly president and secretary of the Northwest Park District, respectively. Additional counts

numbered one to six, inclusive, and each of them, charge a conspiracy on the part of the defendants Gubbins, Brekke, Milano, and R. E. Herczel & Co. to defraud the Northwest Park District through the aforesaid payments to R. E. Herczel & Co., which are alleged to have been illegal and unauthorized, because (1) such payments were made pursuant to an agreement to sell park district bonds at less than par, (2) such payments amounted to a diversion of trust funds, and (3) they were made pursuant to an illegal agreement to employ a lobbyist with public funds; that the defendants illegally converted the aforesaid sums to their own use, and that such payments were made by the defendants Gubbins, Brekke and Milano, as officers of the district, and received by the defendant R. E. Herczel & Co., pursuant to such conspiracy with intent to defraud the Northwest Park District of its money or property, and ask for judgment against the defendants for $71,000.

Additional count No. 7 is directed against the defendant Glens Falls Indemnity Company and alleges that said defendant was surety on the defendant Brekke's official bond as secretary and superintendent of the Northwest Park District, in the penal sum of $10,000; incorporates the allegations of the other additional counts by reference; charges a breach of said bond, in that said Brekke "did, to-wit, on the 18th day of August, 1931, draw and approve," the warrants or vouchers by which the aforesaid payments to R. E. Herczel & Co. were made, notwithstanding that "the said Eden T. Brekke at all said times well knew that the said R. E. Herczel & Co. did not have any valid claims against the said Northwest Park District for said sums of money," and asks for judgment against the Glens Falls Indemnity Company for $10,000 upon the bond.

Additional count No. 8 is also directed against the defendant Glens Falls Indemnity Company, incorpo-

rates by reference the allegations of additional counts Nos. 1 to 6, and charges a breach of Milano's $20,000 bond as treasurer, in that Milano "did, on to-wit, the 18th day of August, 1931, draw, approve and pay" the warrants or vouchers by which the aforesaid payments to R. E. Herczel & Co. were made, notwithstanding that "the said Francis X. Milano at all of said times well knew that the said R. E. Herczel & Co. did not have any valid claims against the said Northwest Park District for the said sums of money."

Answers were filed by the different defendants to the several counts mentioned in the declaration, and judgments were entered by the court as hereinbefore mentioned, and it is from these judgments that the defendants appeal.

It appears from the evidence offered upon the trial of the case that the Northwest Park District was a park district in Cook county, Illinois, organized under "An act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water" approved June 24, 1895 (par. 256, sec. 1, ch. 105, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 96.403]). In the year 1934, it was superseded by the Chicago Park District, the plaintiff in this case, under the act by which the Chicago Park District was created (par. 333, sec. 1, ch. 105, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 96.501]).

In 1931, the board of commissioners of Northwest Park District consisted of the defendant Joseph F. Gubbins, president, and A. E. Olson, William Rieger, Jr., Oscar C. Johnson, and Frank E. Kalteaux, who were not made defendants to this cause. The defendant, Eden T. Brekke, held the offices of secretary and superintendent, and the defendant Francis X. Milano, the office of treasurer. William J. Mannion, not a defendant, held the office of attorney for the district. All of these officers were appointed by the board of

commissioners, and their duties were defined in the general ordinances of the district adopted November 1, 1915, as subsequently modified. The defendants Brekke, as secretary and superintendent, and Milano, as treasurer, had both given bond with the defendant Glens Falls Indemnity Company as surety, in the penal sum of $10,000 and $20,000 respectively, conditioned for the performance of their respective duties ''in the time and manner prescribed or to be prescribed by law.''

There was also an office staff of full time employees, likewise appointed by the commissioners, who kept the books and records of the district and performed the clerical work under the general supervision of the superintendent, consisting of E. A. Brucker, former treasurer of the district, Helen Anderson, and Muriel Newman.

The defendant Gubbins, the president of Northwest Park District in 1931, had been elected a commissioner in 1925, and served as president from 1926 until the Chicago Park District took over in 1934. He had been a deputy coroner for 9 years prior to becoming a commissioner.

The defendant Brekke, the secretary and superintendent of Northwest Park District in 1931, served in that capacity from 1924 to 1934. He also had served as a commissioner of the West Park District during part of this period.

The defendant Milano became treasurer of Northwest Park District in November, 1930, and remained in that office about 2 years. He was employed as assistant cashier in the Cragin State Bank from 1929 to 1931, when the bank closed, and prior to that, as paying teller in the Italian Trust and Savings Bank from 1922 to 1925. At the time of the trial, he was employed by the Clinton Manufacturing Company as an inspector of radio cabinets. He had never held any other public office of any kind.

In January, 1931 (William J. Mannion) the attorney for the district prepared an ordinance authorizing a $2,000,000 bond issue, which was read and adopted at a meeting of the commissioners on January 26, 1931. The ordinance provided that the bonds were to be issued ''for the purpose of providing funds for the payment of land condemned or purchased for parks or boulevards, for the building, maintaining, improving and protecting the same, and for the payment of expenses incident thereto'' and that ''the funds realized from the sale of the bonds be and the same are hereby appropriated for the purposes herein set out, and shall be used for no other purposes whatsoever.''

On January 27, 1931, the day after this ordinance was adopted, secretary Brekke, sent out a letter to twenty-four bond houses, including the defendant R. E. Herczel & Co., announcing that sealed bids for the issue would be received by the board at its regular meeting Monday, February, 1931, and stating:

''These bonds are issued subject to validation by the State legislature at no extra expense to park District and approval by Chapman and Cutler without any additional expense.

''The right to reject any and all bids is reserved. The right to auction said bonds after opening of bids is reserved. Bids to be sent to the Secretary prior to said meeting.''

In the latter part of January or first part of February, 1931, Paul K. Van Winkle, vice president of the defendant R. E. Herczel & Co. met an attorney on the street in Chicago whom he had known for over 30 years. This attorney told Van Winkle that the Northwest Park District was contemplating the issuance of $2,000,000 of bonds, which would need validating by the general assembly, and suggested to Van Winkle that his firm bid for the bonds, and, if successful, employ him to secure such validation. Van Winkle testified that either in that or subsequent conversations with

this attorney he agreed verbally to pay him a fee of "$70,000" for work in obtaining the requisite validating legislation, in the event that R. E. Herczel & Co. was the successful bidder for the bonds; that Holland M. Cassidy, another attorney, drew up the validating bill and that the attorney retained was to take it to Springfield and have it introduced; that he did not recall how that figure was arrived at as the charge for validating this piece of legislation, but that the amount was agreeable to R. E. Herczel & Co.

Before the meeting of the board at which bids were received, Van Winkle went to the office of the attorney for the Northwest Park District, and asked him for information on how to submit his bid. He testified he thought that the defendant Brekke was present at this conference, although he was not sure, and could not recall whether the defendant Gubbins was present or not. The witness Van Winkle testified that he was sure he talked with this attorney about his bid before submitting it to the board, and also that he was not acquainted with the attorney for the defendant, and did not recall ever having seen or talked with him.

From the minutes of the board it appears that three bids for the $2,000,000 bond issue were received at the meeting of the board of commissioners held on February 9, 1931, and that all of the commissioners and officers of the Northwest Park District were present. One bid of "par" was received from the Municipal Securities Corporation, "subject to the legality of this issue of bonds being approved by our attorneys"; another of "Two Million Dollars, subject to an allowance of $7,100 for expenses incident to the handling of this issue, it being understood that these bonds must be validated by the State Legislature, we agreeing to use our best efforts towards securing such validation," from the Hanchett Bond Co.; and a third from the defendant R. E. Herczel & Co., signed by its vice presi-

dent, Van Winkle. The Herczel & Co. bid consisted of
two letters, both dated February 9, 1931, one offering
to pay "the sum of $2,000,000 and accrued interest"
for the bond issue, "subject to approval . . . by our
attorney, it being understood that these bonds must be
validated by the State Legislature before issuance"
and the other reading as follows:

"Referring to your proposed issue of $2,000,000
5% bonds for which we have made a proposal of par
and accrued interest, it is understood and is hereby
agreed that we are to be allowed the sum of $21,000 and
the accrued interest on the bonds from the date of the
bonds to the date that the bonds are delivered to us
and paid for, for our expenses in legalizing and vali-
dating and other necessary expenses incidental to the
issuing of these bonds."

On February 28, 1931, at a special meeting of the
board of commissioners, a resolution was adopted
calling a special election to submit to the voters of the
district, the proposition of increasing the authorized
aggregate indebtedness from $2\frac{1}{2}$ to 5 per cent of the
value of the taxable property therein. This proposi-
tion was voted on in the election of April 7, 1931, and
defeated. Subsequently, the general assembly, by act
approved July 3, 1931, entitled "An Act to authorize
certain park districts to issue bonds where such bonds
together with the existing indebtedness exceeds in the
aggregate two and one-half per cent of the value of
the taxable property" (par. 299j, sec. 1, ch. 105, Ill.
Rev. Stat. 1937 [Jones Ill. Stats. Ann. 139.207]) vali-
dated park district bonds authorized prior to May 1,
1931. Thereafter during the summer of 1931, the bonds
were executed by the defendants Gubbins, Brekke and
Milano at the Bismarck Hotel.

On July 27, 1931, shortly after the validating act was
passed, the board of commissioners at its regular meet-
ing, and by affirmative vote of the entire board, author-

ized the payment of 144 different bills and claims against the district, aggregating $246,976.20, among which were included the items "R. E. Herczel & Co., $50,000," and "R. E. Herczel & Co., $21,000." The records show that the meeting was attended by all the commissioners, and by William J. Mannion, the attorney, as well as by the defendants.

Brekke testified that, as superintendent, he examined all of these 144 bills before the meeting, and as secretary, presented them to the board for approval, in accordance with the general ordinances prescribing the duties of these officers, and the established practice, and that the bills of R. E. Herczel & Co. for $50,000 and $21,000 which the board approved at that time, were "the bills that were covered by the February meeting for the bond issue."

Some time after the meeting of July 27, 1931, when the resolution directing the payment of bills was adopted, and prior to August 18, 1931, checks Nos. 1086 and 1087 were prepared, drawn on the maintenance fund account of the Northwest Park District in the Central Trust Company of Illinois, and payable to R. E. Herczel & Co., dated August 18, 1931, for $50,000 and $21,000, respectively. The $50,000 check bore the legend "Northwest Park District, in settlement of the following bills: 8/18/31, To R. E. Herczel & Company, Int. due 8/1/31 on Bond Issue 19, $50,000" and the $21,000 check bore the legend "Northwest Park District in settlement of the following bills: 8/1/31, To R. E. Herczel & Company, in part payment of expenses in connection with $2,000,000 Northwest Park Issue dated Feb. 1, 1931, as per agreement dated Feb. 9, 1931, $21,000." Annexed to each of these checks was a voucher bearing the same number, date and legend, and the statement, "The above items, as supported by bills hereto attached, were settled by a check bearing the number and date hereon indicated drawn on the

Central Trust Company of Illinois payable to the order of R. E. Herczel & Company for'' $50,000, on voucher No. 1086, and $21,000, on voucher No. 1087; that all of these checks were executed by the defendants, Gubbins, as president, and Milano, as treasurer of the Northwest Park District, and countersigned or approved by Brekke, as secretary, on or about August 18, 1931. The vouchers attached to the two checks payable to R. E. Herczel & Co. were also approved in writing over the signature of the defendant Gubbins, as president. At the time they were so executed, as above stated, there was not enough money in the park district's various bank accounts to cover them, and would not be until the proceeds of the bond issue were secured and deposited in the Construction Fund account.

On or about August 18, 1931, the park district's attorney, and A. E. Brucker, a member of the full time office staff, appeared at the office of R. E. Herczel & Co. with the two executed checks payable to R. E. Herczel & Co. for $50,000 and $21,000 just referred to, $300,000 of bonds, and a treasurer's receipt, signed by Milano as treasurer, for the purchase price of those bonds.

On August 19, 1931, Van Winkle, on behalf of R. E. Herczel & Co. delivered a check for $51,000 to the attorney in payment of his fee for the work in connection with validating the bond issue. Van Winkle testified that by the time the act was passed and the bonds were ready for delivery, the bond market had fallen so much that R. E. Herczel & Co. faced a loss on the deal; that he persuaded the attorney for this bond house to cut his fee from ''$70,000'' to $51,000, and that the remaining $20,000 was retained by R. E. Herczel & Co.

Under date of December 1, 1931, R. E. Herczel & Co., by Richard E. Herczel, president, formally notified the Northwest Park District of the termination of this agreement, ''due to the refusal of our attorneys, Chap-

man & Cutler, to render an approving legal opinion on the balance of the Northwest Park District bonds.''

The remaining $1,400,000 of bonds of this issue still remains in escrow at the First Union Trust & Savings Bank.

The defendants, Brekke, Gubbins and Milano, insist they are not guilty of fraud or conspiracy against the Northwest Park District, but that they acted pursuant to the orders of the board of commissioners, and in acting for it point to the fact, (1) that the contract with R. E. Herczel & Co. was entered into and approved by affirmative vote of the entire board at its meeting of February 9, 1931; (2) that the payment of $50,000 and $21,000 to R. E. Herczel & Co. was ordered by the affirmative vote of the entire board at its meeting of July 27, 1931; and (3) that these payments, as well as all transfers between the construction fund and the maintenance fund, were duly reported in the treasurer's report for the period from July 1, 1931, to September 30, 1931, and approved by affirmative vote of the entire board at its meeting on October 26, 1931.

It is well to have in mind and consider the manner in which the approval of these vouchers was brought to the attention of the board of commissioners. It appears that Brekke, who was secretary and superintendent, was required to present to the board for approval the several vouchers necessary to pay accruing bills against the district, and on the occasion when the vouchers for $71,000 were presented to the board for approval they were included in the 144 different bills and claims against the district aggregating $246,976.20.

On the face of this transaction it is apparent that this money was to be used for a purpose not in accordance with the law of this State. The money which was finally received on these vouchers payable to the bond house of R. E. Herczel & Co. was to be used for the purpose of validating the bond issue of $2,000,000.

The very fact that these vouchers were issued for the purpose mentioned would arouse suspicion as to whether this was a legitimate transaction or not. When we consider that the money was to be paid to an attorney, $51,000 of which was delivered to his partner, and that he did not receive the full amount of $71,000, for the reason that one of the members of the bond house persuaded him to cut his fee from ''$70,000'' to $51,000, and the remaining $20,000 was retained by the bond house, this was enough to arouse suspicion as to the legitimacy of the transaction, and more especially when we come to examine the two checks in question and find that the purpose for which this money was to be used is written on them.

On the question of knowledge, the evidence established from the testimony of Van Winkle, an official of the bond house, that the $71,000 was intended as a fee to be paid to an attorney for procuring legislation to validate the bond issue and, at the time, that fact was discussed with the defendants, Brekke and Gubbins, and was discussed at the meeting at which the contract was entered into and at which Milano was present.

The courts have held that a contract based upon an illegal or immoral consideration is unenforceable, and this proposition of law has been well considered by counsel. It is elementary that a contract to perform services which would tend necessarily to improperly influence legislation, public contracts or the administration of justice by reason of contingent compensation provided therein, is unenforceable.

In McQuillin on Municipal Corporations, Vol. 5, p. 945, the author lists as among the expenditures or indebtedness held unauthorized the following: lobbying to obtain an increase of municipal powers and lobbying expenses in securing beneficial or opposing legislation and states that some courts have held that, without express authority, a municipal corporation has

no power to expend the public revenue to obtain or oppose legislation before the State legislature or the congress; that contracts to procure legislation, either by the passage of statutes or ordinances, are generally held void on the ground of public policy, and of course this rule would apply to the contract now before us— the subject of the litigation.

And then in the case of *Crichfield v. Bermudez Asphalt Paving Co.*, 174 Ill. 466, the court said: "It makes no difference whether the parties were actually, guilty of bribery and corruption under the contract or not. If the performance of the obligations imposed by the contract has an evil tendency or furnishes a temptation to use improper means, the contract is illegal and *contra bonos mores.*"

Other cases might be cited upon this subject, but we believe the rule is well established, and the citing of further authorities would add nothing to what we have already stated.

The money that was received and deposited to the credit of the Northwest Park District was in the nature of a trust fund and could only be used for the purpose for which the bonds were issued and sold to the general public. This money was deposited to the credit of the construction fund, and was so reported in the treasurer's report for the period from July 1, 1931, to September 30, 1931. Subsequently, however, the individual defendants in this litigation transferred the moneys in the construction fund to the maintenance fund, and it was from this fund that the $71,000 was paid to R. E. Herczel & Co., the holder of the checks. The payment so made was improper, premature and unauthorized. No authority was given to Gubbins, Brekke and Milano to make the transfer to the maintenance fund. The authority to make such transfer rests in the park board.

Acts such as we have indicated, show that the individual defendants acted without authority in the pay-

ment we have outlined, and it was a violation of their duties in connection with this trust fund, and having acted without authority they are liable, and the court was justified in entering judgment such as was entered in the record as we have it before us.

For the reasons stated the judgment entered by the court against these several defendants is affirmed.

*Judgment affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.